681 S.E.2d 485 (2009)
In the Matter of J.D.L.
No. COA09-25.
Court of Appeals of North Carolina.
August 18, 2009.
*487 Laura M. Watts-Whitley, New Bern, for petitioner-appellee.
Deana K. Fleming, Raleigh, for guardian ad litem.
Windy H. Rose, Columbia, for respondent-appellant.
STROUD, Judge.
Respondent's parental rights to her minor child were terminated by order entered 26 September 2008 in Craven County District Court. Respondent challenges the order on procedural and on substantive grounds. We affirm.

I. Background
J.D.L. (hereinafter "Joey")[1] was born 26 February 2005. On 24 May 2006, the Craven County Department of Social Services (hereinafter "Petitioner" or "DSS") filed a petition alleging Joey was a neglected and dependent juvenile. The whereabouts of Joey's father were unknown at the time and no summons was issued to the father. A summons was issued to Joey's mother (hereinafter "Respondent") on 24 May 2006 but was returned unserved. The record contains no indication that Petitioner ever obtained an endorsement, extension, or alias/pluries summons or that a summons was ever served on any party. However, Respondent was present at the hearing on the neglect and dependency petition on 29 September 2006.
DSS subsequently deleted the allegations of neglect from the petition. On 15 November 2006, the trial court adjudicated Joey as dependent based upon Respondent's admissions in open court to the allegations of dependency. Custody of Joey was placed with DSS. Joey's father relinquished his parental rights.[2]
On 10 March 2008, Petitioner filed a petition to terminate Respondent's parental rights to Joey. The petition alleged, inter alia, dependency and abandonment. Summons was issued and served upon Joey by and through the guardian ad litem on 12 March 2008 and upon Respondent on 13 March 2008. After conducting adjudicatory and disposition hearings on 22 August 2008, the trial court entered an order terminating Respondent's parental rights on 26 September 2008. Respondent appeals.[3]

*488 II. Procedural Issues

A. Subject Matter Jurisdiction
Respondent first contends that the order terminating her parental rights must be vacated because the trial court lacked subject matter jurisdiction to hear and rule on the termination petition. We disagree.
Respondent relies on In re Miller, 162 N.C.App. 355, 590 S.E.2d 864 (2004). In Miller, this Court vacated an order terminating parental rights for want of subject matter jurisdiction because the petitioner, DSS, did not have legal custody of the child as required by N.C. Gen.Stat. § 7B-1103(a). 162 N.C.App. at 358, 590 S.E.2d at 866.
Respondent argues that because the summons in the underlying neglect and dependency petition was never served on her, the trial court's order placing custody with DSS in that proceeding was void. Respondent further contends that if the custody order was void, DSS never had legal custody of Joey and accordingly lacked standing to file the termination petition. Respondent concludes that absent standing by DSS, the trial court lacked subject matter jurisdiction to terminate her parental rights.
In re J.T. (I), J.T. (II), A.J. recently addressed the issue of subject matter jurisdiction over an action terminating parental rights pursuant to Article 11 of the Juvenile Code.[4] 189 N.C.App. 206, 657 S.E.2d 692 (2008), rev'd, 363 N.C. 1, 672 S.E.2d 17 (2009). In J.T., summonses were issued to the juveniles' parents, but no summonses were issued to the juveniles, as required by N.C. Gen.Stat. § 7B-1106(a). 363 N.C. at 2-3, 672 S.E.2d at 17-18. On appeal, this Court vacated the termination order, holding that "`failure to issue a summons to the juvenile deprives the trial court of subject matter jurisdiction.'" 189 N.C.App. at 208, 657 S.E.2d at 692 (quoting In re K.A.D., 187 N.C.App. 502, 504, 653 S.E.2d 427, 428-29 (2007), which cited In re C.T. & R.S., 182 N.C.App. 472, 475, 643 S.E.2d 23, 25 (2007)).
However, the North Carolina Supreme Court granted discretionary review and reversed, holding that the trial court had subject matter jurisdiction despite the failure to issue summonses to the juveniles. 363 N.C. at 4-5, 672 S.E.2d at 19. Specifically, the Supreme Court held:
In any given case under the Juvenile Code, the issuance and service of process is the means by which the court obtains jurisdiction....
. . . .

It is inconsequential to the trial court's subject matter jurisdiction that no summons named any of the three juveniles as respondent and that no summons was ever served on the juveniles or their GAL. These errors are examples of insufficiency of process and insufficiency of service of process, respectively, both of which are defenses that implicate personal jurisdiction and thus can be waived by the parties....
In summary, [when] the requirements of N.C.G.S. § 7B-1101 [are] satisfied, the trial court's subject matter jurisdiction attache[s] upon issuance of a summons. It is therefore unnecessary to make inquiry into the summons beyond a determination of whether a summons was issued.
363 N.C. at 4-5, 672 S.E.2d at 18-19 (citations, quotation marks, brackets and emphasis in original omitted; emphasis added).
Approximately four months after deciding J.T., see id., the Supreme Court filed In re K.J.L., which held that even "failure to legally issue a summons" implicated only personal jurisdiction. 363 N.C. 343, 345, 677 S.E.2d 835, 837 (2009) (emphasis added). K.J.L. further held that "the summons is not the vehicle by which a court obtains subject matter jurisdiction over a case, and failure to follow the preferred procedures with respect to the summons does not deprive the court of *489 subject matter jurisdiction." 363 N.C. at 346, 677 S.E.2d at 837. K.J.L. also stated that "the summons affects jurisdiction over the person rather than the subject matter, [therefore] ... a general appearance by a civil defendant `waive[s] any defect in or nonexistence of a summons.'" (quoting Dellinger v. Bollinger, 242 N.C. 696, 698, 89 S.E.2d 592, 593 (1955), adding emphasis and omitting citations). 363 N.C. at 347, 677 S.E.2d at 837.
K.J.L. also disavowed interpreting the following language in J.T., "`where no summons is issued, the court acquires jurisdiction over neither the parties nor the subject matter of the action[,]'" J.T. at 4, 672 S.E.2d at 18 (quoting In re Poole, 151 N.C.App. 472, 475, 568 S.E.2d 200, 202 (2002) (Timmons-Goodson, J., dissenting) (citations omitted), rev'd per curiam for reasons stated in dissenting opinion, 357 N.C. 151, 579 S.E.2d 248 (2003)), as "mean[ing] the failure to issue a summons defeats subject matter jurisdiction." K.J.L., 363 N.C. at 347, 677 S.E.2d at 838. K.J.L. added that "[t]he summons relates to subject matter jurisdiction ... only insofar as it apprises the necessary parties that the trial court's subject matter jurisdiction has been invoked and that the court intends to exercise jurisdiction over the case." 363 N.C. at 347, 677 S.E.2d at 838.
By their respective holdings, J.T., 363 N.C. 1, 672 S.E.2d 17, and K.J.L., 363 N.C. 343, 677 S.E.2d 835, impliedly abrogated the following language of In re A.B.D.:
[W]here there is neither endorsement nor issuance of alias or pluries summons within 90 days after issuance of the last preceding summons, the action is discontinued as to any defendant not served within the time allowed and treated as if it had never been filed.

. . . .
Because Petitioner failed to obtain an endorsement, extension, or alias/pluries summons within ninety days after the issuance of the summons, the termination of parental [rights] action should have been treated as if it had never been filed. And where an action has not been filed, a trial court necessarily lacks subject matter jurisdiction.

173 N.C.App. 77, 85-86, 617 S.E.2d 707, 713 (2005) (citations and quotation marks omitted; emphasis in first paragraph supplied by A.B.D. and emphasis in second paragraph added). By impliedly abrogating the foregoing language in A.B.D., J.T. and K.J.L. also appear to have rejected the application of Rule 4(e) of the North Carolina Rules of Civil Procedure in all cases under the Juvenile Code.
Rule 4(e) provides that an "action is discontinued as to any defendant not theretofore served with summons within the time allowed." N.C. Gen.Stat. § 1A-1, Rule 4(e). J.T. and K.J.L. impliedly add the words "unless the party who is not served makes a general appearance in the action" to the foregoing sentence for purposes of cases under the Juvenile Code.
A.B.D. and Rule 4(e) notwithstanding, K.J.L. and J.T. hold that lack of a summons in any juvenile action, including both failure to issue a summons to and failure to serve a summons upon a parent in an action for abuse, neglect or dependency, creates a defect only as to personal jurisdiction.
It is well settled that
[o]bjections to a court's exercise of personal (in personam) jurisdiction ... must be raised by the parties themselves and can be waived in a number of ways. Broadly stated, any form of general appearance waives all defects and irregularities in the process and gives the court jurisdiction of the answering party even though there may have been no service of summons.
J.T., 363 N.C. at 4, 672 S.E.2d at 18 (citations and quotation marks omitted).
In the case sub judice, a summons was issued forthwith after the filing of the neglect and dependency petition. Even though Respondent was never served with the summons, she made a general appearance in the action before the trial court, thus waiving any defense as to personal jurisdiction. No defect in the trial court's jurisdiction otherwise appearing, we conclude the trial court had jurisdiction over the underlying neglect and dependency action and issued *490 a valid custody order to DSS. The custody order gave DSS standing to file the instant petition for termination of parental rights per N.C. Gen.Stat. § 7B-1103(a). Respondent's argument is without merit.

B. Appointment of Guardian Ad Litem
Respondent next contends that the court erred by failing to appoint a guardian ad litem for her. Petitioner has filed a motion to strike this argument on the ground it is not raised by an assignment of error. Our review is limited to the assignments of error set out in the record on appeal. N.C.R.App. P. 10(a). "Each assignment of error shall... state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C.R.App. P. 10(c)(1).
Here, Respondent cites assignments of error numbers 19 and 26 as the basis for her argument. Assignment of error number 19 states that conclusion of law number 3 is not supported by the evidence. Conclusion of law number 3 consists of the court's determination of the existence of grounds to terminate Respondent's parental rights. Assignment of error number 26 states that the court erred by concluding that Respondent's parental rights should be terminated on the ground of dependency. Neither of the assignments of error cited in support of this argument by Respondent "plainly, concisely and without argumentation" raise the question of whether the court erred by failing to appoint a guardian ad litem for Respondent. N.C.R.App. P. 10(c)(1). We therefore allow the motion to strike and we do not consider the merits of this argument.

III. Substantive Issues
Respondent contends that the court committed reversible error in finding dependency and abandonment as grounds to terminate her parental rights. Respondent further contends that even if grounds for termination exist, the trial court erroneously concluded that termination is in Joey's best interests.
"A finding of any one of the grounds enumerated [in N.C. Gen.Stat. § 7B-1111], if supported by competent evidence, is sufficient to support a termination" of parental rights. In re J.L.K., 165 N.C.App. 311, 317, 598 S.E.2d 387, 391, disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004). "On appeal, this Court considers whether the trial court's findings of fact are based on clear, cogent, and convincing evidence and whether those findings support the trial court's conclusion that grounds for termination exist pursuant to N.C. Gen.Stat. § 7B-1111." In re C.W., 182 N.C.App. 214, 219, 641 S.E.2d 725, 729 (2007) (citations omitted).
If no reversible error is found in the trial court's conclusion that grounds for termination exist, this Court then "considers whether the trial court abused its discretion in determining that it was in the child's best interests to terminate the respondent's parental rights." Id. "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." Greene v. Hoekstra, 189 N.C.App. 179, 180, 657 S.E.2d 415, 417 (2008) (citation and quotation marks omitted).

A. Grounds for Termination
Parental rights may be terminated if it is shown "[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (2007). A dependent child is one who is "in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9) (2007). A conclusion that a juvenile is dependent may be supported by evidence that the parent is unable to care for the child or to suggest an appropriate alternative placement for the child. In re D.J.D., 171 N.C.App. 230, 239, 615 S.E.2d 26, 32 (2005).
Parental rights may also be terminated upon a finding that "[t]he parent has *491 willfully abandoned the juvenile for at least six months immediately preceding the filing of the petition." N.C. Gen.Stat. § 7B-1111 (a)(7) (2007). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Adoption of Searle, 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted).
In the order of termination, the trial court adopted findings of fact made in previous orders in this case and made additional findings based upon evidence received at the termination hearing. The trial court's findings of fact show Respondent stipulated the child was dependent at the time of the original adjudication order. At that time Respondent was homeless and unable to secure and maintain a stable residence for herself and the minor child. Joey was born with low birth rate and was not making appropriate weight gains. Respondent failed to appear for medical appointments so physicians could monitor Joey's condition. Respondent had not fed Joey on the day a social worker made a home visit at 2:15 p.m.
At the time of a review hearing on 29 September 2006, Respondent was residing with her parents, who have legal custody of Respondent's two older children, also subjects of juvenile petitions. The maternal grandfather was a paraplegic, and the maternal grandmother was caring for him in addition to Respondent's two elder children. The guardian ad litem believed that respondent lacked the ability to care for herself alone, much less a child. The guardian ad litem advocated that the next move of the child should be to a permanent home, given that Respondent failed to make satisfactory progress in her parenting skills after the older two children were taken from her. The court warned Respondent that she needed to show dramatic improvement in her ability to live independently and to care for Joey.
Respondent failed to appear for a review hearing on 18 January 2008. At that time she was still unemployed. She had recently delivered another child. Respondent told a social worker that her living arrangements are of no concern to the DSS and that she wanted the DSS out of her business. Respondent failed to maintain contact with her attorney. Respondent's attorney stated that "he could not, in good conscience, oppose" the court's permanent plan of adoption by the paternal grandparents, "given the Respondent/Mother's current situation, and lack of an appropriate alternative plan."
The trial court further found that while Respondent had made some progress during the previous twelve months, "conditions have not sufficiently changed so that the minor child is no longer dependent, as defined by N.C.G.S. § 7B-101." The court's findings indicate that Respondent "still fails to show the Court the ability to properly parent the minor child and attend to his special needs." Respondent "denied that the juvenile was ever dependent in her care, despite prior adjudications and stipulations." Having been in foster care for more than two thirds of his life, Joey has several special needs, including speech and hearing issues. Respondent had not seen Joey since January 2007, she had "given no gifts, support or shown any love or affection for the child since she last saw him," and she had not attempted to do so.
Clear, cogent, and convincing evidence in the record supports these findings. The findings in turn support the trial court's conclusions that Joey was dependent and abandoned, both of which are statutory grounds for termination. N.C. Gen.Stat. § 7B-1111 (2007).

B. Best Interests of Child
N.C. Gen.Stat. § 7B-1110(a) provides trial judges with criteria to consider in making the best interests determination:
(1) [t]he age of the juvenile[;] (2)[t]he likelihood of adoption of the juvenile[;] (3)[w]hether termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile[;] (4)[t]he *492 bond between the juvenile and the parent[;] (5)[t]he quality of the relationship between the juvenile and the proposed adoptive parent ... [;] and (6)[a]ny relevant consideration.
N.C. Gen.Stat. § 7B-1110(a)(2007).
The findings of fact show that Joey was three years old at the time of the order terminating Respondent's parental rights. He had been residing with his paternal grandparents for more than one year. The permanent plan for Joey was adoption and the paternal grandparents desired to adopt him as soon as all obstacles to adoption were removed. Joey had not seen Respondent for more than one year when the petition was heard. Respondent had given no gifts, support, love or affection to Joey since the last time she saw him. Respondent also failed to attend hearings concerning Joey. All of these factors call into question the strength of Respondent's bond with Joey. The trial court also found that Joey had formed a bond with his paternal grandparents. They have given him the love and affection that they would have given their own biological child. They have taken care of his special needs by taking him to appointments with various specialists. Joey will also be eligible to receive certain VA benefits as an adopted child if something happened to the paternal grandfather.
The foregoing findings reflect a reasoned decision by the trial court. We find no abuse of discretion in the trial court's determination that termination of Respondent's parental rights is in Joey's best interest. Accordingly, the order is affirmed.
AFFIRMED.
Judges JACKSON and STEPHENS concur.
NOTES
[1] We will refer to J.D.L. by a pseudonym, Joey, to protect the child's identity and for ease of reading.
[2] The trial court found as fact that Joey's father relinquished his rights to Joey, but it is not clear from the record how or when this happened. Joey's father is not a party to this appeal.
[3] Respondent's counsel filed a notice of appeal, without Respondent's signature showing her consent, on 27 October 2008. Respondent's counsel filed an amended notice of appeal, which contained Respondent's signature indicating her consent to an appeal, on 30 October 2008. Petitioner has filed in this Court a motion to dismiss the appeal. As notice of appeal in compliance with Appellate Rule 3A(a) and N.C. Gen.Stat. § 7B-1001(c) was not given within 30 days after entry of judgment as required by N.C. Gen.Stat. § 7B-1001(b), we grant the motion and consider Respondent's petition for writ of certiorari filed in response to the motion to dismiss. In our discretion we allow the petition for writ of certiorari.
[4] The Juvenile Code is found in Chapter 7B of the General Statutes of North Carolina.