IN RE: C.I.M., G.H.M., L.P.M., AND R.D.A.M., MINOR JUVENILES

No. COA11-223

(Filed 2 August 2011)

**1. Termination of Parental Rights—grounds—willful abandonment**

The trial court did not err by determining that grounds existed for terminating respondent father's parental rights based on willful abandonment under N.C.G.S. § 7B-1111(a).

**2. Termination of Parental Rights—best interests of child—abuse of discretion standard**

The trial court did not abuse its discretion by concluding that termination of respondent father's parental rights was in the best interests of the juveniles.

Appeal by respondent from order entered 10 November 2010 by Judge J. Thomas Davis in McDowell County District Court. Heard in the Court of Appeals 5 July 2011.

*Hanna Frost Honeycutt for petitioner-appellee.*

*Levine & Stuart, by James E. Tanner III, for respondent-appellant father.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for guardian ad litem.*

HUNTER, Robert C., Judge.

Respondent-father Christopher M. appeals the trial court's order terminating his parental rights with respect to his four children,

**IN RE C.I.M.**

[214 N.C. App. 342 (2011)]

C.I.M. ("Carl"), G.H.M. ("Gary"), L.P.M. ("Lyle"), and R.D.A.M. ("Renee").[1] After careful review, we affirm.

## Facts

Respondent-father and respondent-mother Ashley W. are the biological parents of the four juveniles. McDowell County Department of Social Services ("DSS") first became involved with the family in 2002, when DSS received a referral stating that respondent-mother, who was 17 years old at the time, was living with respondent-father, who was 33, and that she had just given birth to Carl. After respondent-mother moved out of the house, DSS closed the case. Although DSS received a report in 2003 that respondent-mother had moved back in with respondent-father, the case was closed because respondent-mother turned 18 during the investigation.

In April 2008, DSS received a report of domestic violence between respondent-father and respondent-mother. After investigation, the family was found to be in need of services and in-home family preservation services were put in place to prevent removal of the juveniles. The case was closed after the family complied with the services.

In February 2009, DSS received a report of improper supervision, alleging that respondents had left the juveniles to be watched by another child of respondent-father's who previously had been caught performing a sexual act on Gary. The allegation was substantiated, the older child was removed from respondents' home, and the case was closed.

On 30 March 2009, respondent-father filed a complaint for a domestic violence protective order, alleging that respondent-mother had chased him and threatened to hit him with a pole. During DSS' investigation, respondents accused each other of committing acts of domestic violence. Respondent-father eventually dropped the complaint in May 2009. On 7 May 2009, respondent-father left the juveniles with their maternal grandmother while she was recovering from injuries sustained during an incident of domestic violence. When the DSS social worker visited the house on 9 May 2009, the grandmother indicated that respondent-father had not returned home, that she did not know how to get in contact with him, and that she could not take care of the juveniles as she was recovering from her injuries. The juveniles were moved to another family member's home for the night and subsequently placed in kinship placements.

---

1. Pseudonyms are used throughout this opinion to protect the juveniles' privacy and for ease of reading.

**IN RE C.I.M.**

[214 N.C. App. 342 (2011)]

On 22 May 2009, DSS filed petitions alleging that the juveniles were neglected and dependent juveniles due to their not having received proper care and supervision and their living in an environment injurious to their welfare. DSS further alleged with respect to Carl, who suffers from a medical condition similar to cerebral palsy, that he was not receiving proper medical care. In a consent order entered 8 October 2009, the juveniles were adjudicated as being dependent and neglected and DSS was granted custody of the juveniles. In addition, the trial court's order directed respondent-father to complete a GAIN assessment; to complete a psychological assessment; to go to anger management counseling; to submit to random drug screens; to attend parenting classes; and to pay child support.

In a permanency planning order entered 9 July 2010, the trial court found that respondent-father had failed to complete a GAIN assessment or psychological evaluation; failed to enter anger management counseling or parenting classes; and failed to submit to any random drug screens. The court also found that respondent-father had visited with the juveniles only four times since May 2009 and that two of the visits had been unsupervised by DSS, in violation of the 8 October 2009 consent order.

A week later, on 13 July 2010, DSS filed a termination of parental rights ("TPR") petition, alleging grounds existed for terminating respondents' parental rights with respect to the four juveniles under General Statute sections 7B-1111(a)(1) (neglect), 7B-1111(a)(2) (willfully leaving juvenile in foster care), 7B-1111(a)(3) (willfully failing to pay reasonable portion of juvenile's care), 7B-1111(a)(6) (incapacity to provide proper care or supervision), and 7B-1111(a)(7) (willful abandonment). After conducting a hearing on the TPR petition, the trial court entered an order on 10 November 2010 in which the court determined that grounds for terminating respondents' parental rights existed under sections 7B-1111(a)(1), 7B-1111(a)(2), 7B-1111(a)(3), and 7B-1111(a)(7), but not under section 7B-1111(a)(6). The trial court further concluded that termination of respondents' parental rights was in the best interests of the juveniles, and, consequently, terminated their parental rights with respect to Carl, Gary, Lyle, and Renee. Respondent-father timely appealed to this Court.[2]

---

2. Respondent-mother did not appeal from the trial court's order terminating her parental rights with respect the juveniles, and, therefore, she is not a party to this appeal.

**IN RE C.I.M.**

[214 N.C. App. 342 (2011)]

I

**[1]** Respondent-father first contends that the trial court erred in determining that grounds existed for terminating his parental rights under N.C. Gen. Stat. § 7B-1111(a) (2009). "The standard for appellate review of the trial court's conclusion that grounds exist for termination of parental rights is whether the trial [court]'s findings of fact are supported by clear, cogent, and convincing evidence, and whether these findings support its conclusions of law." *In re McMillon*, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Findings of fact supported by competent evidence are binding on appeal, despite evidence in the record that might support a contrary finding. *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984).

Here, the trial court concluded that a basis for termination existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), which provides that parental rights may be terminated when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the [TPR] petition or motion . . . ." For purposes of Chapter 7B cases, " '[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.' " *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986)). Our courts have consistently held that " 'if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.' " *In re J.D.L.*, 199 N.C. App. 182, 189-90, 681 S.E.2d 485, 491 (2009) (quoting *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)).

With respect to willful abandonment, the trial court found in this case that respondent-father had failed to attend child and family team meetings or assist in the development of a case plan; that he had not visited with his children since 2009; that he had not communicated with the children since 2009; and that he failed to pay child support from January through July 2009 although he had some money to provide child support. Based on these findings, the trial court concluded that "pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), . . . Respondent Father willfully abandoned the juveniles for more than six months preceding the filing of the petition in that . . . [he] withheld [his] pres-

**IN RE C.I.M.**

[214 N.C. App. 342 (2011)]

ence, love and care and ha[s] willfully neglected to provide support and maintenance for the juveniles."

The trial court's findings are based on and supported by the testimony of DSS social worker, Veronica Long, who stated that respondent-father did not maintain contact with DSS. She testified that she sent respondent-father 11 letters, made seven phone calls, sent five text messages, but only talked to respondent-father four times. When she talked to respondent-father he would indicate that he would come to DSS to discuss his case plan, but he never followed through. Ms. Long further testified that respondent-father did not attend the visitation with the children supervised by DSS. She stated that she asked respondent-father about visiting the children on four different occasions, that he agreed to visit the children, but that he did not show up for any of the visits. When respondent-father indicated he did not have transportation, Ms. Long offered to pick him up. When she arrived at his residence, however, he was not home. Ms. Long stated that respondent-father never requested visitation with the children until after the filing of the TPR petition. Ms. Long also testified that respondent-father did not pay child support in the six months prior to filing of the petition.

Respondent-father, moreover, acknowledged in the termination proceedings that he did "not step[] up to the plate and do[] what [he] should have." He admitted that he last visited his children in December 2009 and that he did not ask about visiting the children prior to the filing of the TPR petition.

We conclude that this evidence supports the trial court's findings, which, in turn, support its conclusion of termination of parental rights based on willful abandonment. *See In re McLemore*, 139 N.C. App. 426, 428-31, 533 S.E.2d 508, 509-10 (2000). Although respondent-father challenges the other two grounds for terminating his parental rights found by the trial court, this Court has held that "where the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary [for the appellate court] to address the remaining grounds.' " *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) (quoting *In re Clark*, 159 N.C. App. 75, 78 n.3, 582 S.E.2d 657, 659 n.3 (2003)), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006). We, therefore, do not address respondent-father's arguments regarding these grounds for termination.

**IN RE C.I.M.**

[214 N.C. App. 342 (2011)]

II

**[2]** Respondent-father also contends that the trial court erred in concluding that termination of his parental rights was in the best interests of the juveniles. Once the trial court determines that one or more of the statutory grounds for termination exist, the court proceeds to the dispositional phase to determine whether the termination of parental rights is in the best interests of the juvenile. *In re Mills*, 152 N.C. App. 1, 7, 567 S.E.2d 166, 169-70 (2002), *cert. denied*, 356 N.C. 672, 577 S.E.2d 627 (2003); N.C. Gen. Stat. § 7B-1110 (2009). The trial court's determination that the termination of parental rights is in the best interests of the juvenile is reviewed for abuse of discretion, *In re E.M.*, ___ N.C. App. ___, ___, 692 S.E.2d 629, 630 (2010), *cert. denied*, ___ N.C. ___, 700 S.E.2d 749 (2010), meaning that the appellant must demonstrate that the court's ruling is "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

"The Juvenile Code sets out several factors the trial court must consider in determining whether termination of parental rights is in the best interest of the child," *In re S.C.H.*, 199 N.C. App. 658, 666, 682 S.E.2d 469, 474 (2009), *aff'd per curiam*, ___ N.C. ___, 689 S.E.2d 858 (2010):

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a)(1)-(6). The trial court's order indicates that it considered each of the enumerated factors:

47. That the juveniles, [Carl], [Gary], [Lyle], and [Renee], are eight, six, five, and three years old respectively.

48. That the situation of Respondent Mother and Respondent Father . . . demonstrates that said Respondents will not promote,

or will not be able to promote, the children's physical and emotional well-being.

. . . .

50. That the bond between the juveniles and Respondent Father is not significant due to the lack of visitation and failure of Respondent Father to provide any contact, love or affection for the juveniles.

51. That the minor children are in need of a permanent plan of care at the earliest possible age, and this can be accomplished only by severing the relationship of the juveniles to the Respondent Parents and by termination of the parental rights of Respondents.

52. That the juvenile, [Carl], has bonded with his grandfather, has a stable, loving relationship with his grandfather and has improved since being placed in the care of his grandfather. His grandfather is willing to adopt him.

53. That the juveniles, [Renee], [Lyle] and [Gary], have developed a bond with their foster parents, seek the assistance of their foster parents in meeting their needs and have done well since being placed in their care. This foster family is willing to adopt these juveniles.

54. That there is a high probability of adoption for these juveniles.

55. That it is in the juveniles' best interest that the parental rights of Respondents be terminated as the children are in a good and caring home, with placement providers who are willing to adopt them.

56. That adoption would provide permanence for the juveniles and would be in their best interests.

These findings demonstrate, contrary to respondent-father's position, that the trial court "duly consider[ed] the statutory factors applicable to the best interest determination." These findings, moreover, are supported by the juveniles' guardian *ad litem's* court report as well as the testimony of the guardian *ad litem,* Jodie Wood-Seay, and DSS social worker, Ms. Long. The trial court thus did not abuse its discretion in concluding that termination of respondent-father's parental

rights was in the best interests of the juveniles. *See J.D.L.*, 199 N.C. App. at 191-92, 681 S.E.2d at 491-92.

Respondent-father finally argues that the 2005 amendment to N.C. Gen. Stat. § 7B-1110, *see* Act to Amend the Juvenile Code to Expedite Outcomes for Children and Families Involved in Welfare Cases and Appeals, 2005 N.C. Sess. Laws 398, sec. 17, indicates that some of the grounds for termination enumerated in N.C. Gen. Stat. § 7B-1111(a) are "more worthy of termination of parental rights than others," and thus when determining whether termination of parental rights is in the best interests of the juvenile, the trial court must "consider[] not only each possible ground independently, but cumulatively and collectively." In effect, respondent-father argues, if any one of several grounds for termination found by the trial court is not upheld on appeal, then the case must be remanded to the trial court for reconsideration of whether termination of parental rights remains in the best interests of the juvenile, despite the appellate court's affirming an alternative basis for termination.

In addition to being directly contrary to the amendment's explicit purpose of "[e]xpedit[ing] outcomes" in Chapter 7B cases, respondent-father's argument is not supported by the change in the language of the statute. The prior version of N.C. Gen. Stat. § 7B-1110 dictated that if the trial court "determine[d] that any one or more of the conditions authorizing a termination of the parental rights of a parent exist[ed]," then the court was required to "issue an order terminating the parental rights of such parent with respect to the juvenile unless the court . . . further determine[d] that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110 (2003). In amending the statute so that termination of parental rights was no longer mandatory unless the juvenile's best interests required non-termination, the General Assembly simply directed trial courts, after finding that "one or more grounds for terminating a parent's rights exist," to "determine whether terminating the parent's rights is in the juvenile's best interest" in light of the "consider[ations]" set out in section (a) of the statute. Nothing in the current codification of N.C. Gen. Stat. § 7B-1110 suggests that the trial court is required to consider the "worth[iness]" of the grounds for termination found in the adjudication stage of the proceedings when making its discretionary decision in the dispositional phase. Thus, contrary to respondent-father's contention, the 2005 amendment to N.C. Gen. Stat. § 7B-1110 does not affect this Court's holding in *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990), and

similar cases, that "[a] finding of any one of the grounds enumerated [in N.C. Gen. Stat. § 7B-1111] will support a judge's order of termination." Respondent-father's argument is overruled.

Affirmed.

Judges STEELMAN and McCULLOUGH concur.