714 S.E.2d 495 (2011)
In the Matter of I.R.C.
No. COA11-97.
Court of Appeals of North Carolina.
August 2, 2011.
James N. Freeman, Jr., Elkin, for petitioner-appellee Yadkin County Department of Social Services.
Murray C. Greason, III, Winston-Salem, for guardian ad litem.
J. Thomas Diepenbrock, Asheville, for respondent-appellant mother.
HUNTER, Robert C., Judge.
Respondent mother appeals from the trial court's 22 November 2010 modified order terminating her parental rights to the juvenile I.R.C. Respondent mother contends that *496 the evidence does not support the trial court's conclusion that two grounds existed to terminate her parental rights, and that a prior permanency planning order contains insufficient findings of fact to support ceasing reunification efforts.[1] After careful review, we reverse the permanency planning order and remand this case to the trial court for further proceedings.

Background
On 2 September 2008, the Yadkin County Department of Social Services ("DSS") received a report alleging that the juvenile, who was about eight years old at the time, was neglected. The report alleged that respondent mother did not have stable housing and that she had left the juvenile to live in a friend's home for the summer. The report also alleged that the juvenile had inappropriately touched another child. DSS investigated and determined that respondent mother had been leaving the juvenile in "different residences with [respondent] mother staying elsewhere." The juvenile reported to DSS that she had slept in the same bed with respondent mother's stepfather in the past, and that he resided in their home.
On 3 September 2008, respondent mother entered into a safety plan in which she agreed to live with the juvenile. On 12 September 2008, however, DSS discovered respondent mother was only living with the juvenile during the week and taking the juvenile to a relative's home on the weekends. That living arrangement caused the juvenile to be late for school. On 19 September 2008, respondent mother entered into another safety plan in which she agreed to live with the juvenile full-time, and to not leave her alone with any other caregiver. The juvenile was also required to be in school on time, and not to sleep in the same bed with anyone but respondent mother.
On 30 September 2008, a social worker had difficulty making contact with respondent mother. Eventually, the social worker was able to contact the juvenile, and the juvenile said respondent mother had not been home since the previous night. Respondent mother left the juvenile home overnight with two men. DSS then filed a petition alleging that the juvenile was neglected and dependent, and obtained non-secure custody of the juvenile on 1 October 2008.
On 10 November 2008, District Court Judge Jeanie R. Houston entered an order adjudicating the juvenile neglected and dependent. Respondent mother, who lived in Texas at the time and did not attend the adjudication hearing, was ordered to participate in a home study and comply with an out-of-home family services case plan. Respondent father could not be located to be served and did not participate in the hearing. Judge Houston ordered respondents to comply with the family services case plan designed by DSS, and ordered DSS to continue making reasonable efforts toward reunification with respondents.
On 14 December 2009, District Court Judge Michael D. Duncan entered a permanency planning order in which he found respondent mother had completed parenting classes, a substance abuse/mental health assessment, and psychological evaluation, but had been inconsistent about attending weekly therapy sessions and had not attended recommended Al-Anon meetings. Judge Duncan also found respondent mother was working at the time and taking advantage of her visitation opportunities, but respondent father was incarcerated and had not maintained communication with DSS. The juvenile remained in DSS custody, and the permanent plan remained reunification.
On 4 March 2010, Judge Houston entered another permanency planning order, and found that the juvenile was receiving nightly tutoring from her foster parents and attending weekly therapy sessions, and she had disclosed her father had sexually abused her. Judge Houston further found respondent mother had failed to attend her counseling sessions after 11 November 2009, failed to provide proof of attendance for six Al-Anon meetings, and admitted to taking prescription drugs that were not prescribed for her. Respondent father remained incarcerated and did not contact or support the juvenile. *497 Judge Houston changed the permanent plan for the juvenile to adoption and ordered DSS to cease reunification efforts and file a petition to terminate respondents' parental rights within the next 60 days. Respondent mother filed a written "Notice to Preserve Right to Appeal" from the permanency planning order.
On 4 March 2010, DSS filed a motion to terminate respondents' parental rights. As to respondent mother, the motion alleged two grounds for termination: (1) respondent mother had neglected the juvenile pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) (2009); and (2) respondent mother had willfully left the juvenile in foster care for more than 12 months without making reasonable progress toward correcting the conditions that led to the removal of the juvenile from her care, pursuant to N.C. Gen.Stat. § 7B-1111(a)(2). On 8 April 2010, respondent mother filed a written response to the motion.
The matter came on for hearing on 31 August 2010. At both the adjudication and disposition phases, DSS presented testimony from social worker Ginger Souther describing respondent mother's case history and her failure to comply with her family services plans. DSS also presented testimony from several other witnesses, including the juvenile's foster mother. Respondent mother testified on her own behalf at both phases of the hearing. Respondent father voluntarily relinquished his parental rights.
On 9 November 2010, the trial court entered an order terminating respondent mother's parental rights. On 22 November 2010, the trial court entered a modified termination order. Respondent mother gave timely written notice of appeal from the trial court's order terminating her parental rights.

Discussion
Respondent mother contends that, in the 4 March 2010 permanency planning order, Judge Houston failed to make sufficient findings of fact addressing N.C. Gen.Stat. § 7B-507(b) (2009). We agree and hold that the trial court's findings of fact do not support its conclusion of law that reunification efforts with respondent mother should cease.
"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M., 183 N.C.App. 207, 213, 644 S.E.2d 588, 594 (2007). "At the disposition stage, the trial court solely considers the best interests of the child. Nonetheless, facts found by the trial court are binding absent a showing of an abuse of discretion." In re Pittman, 149 N.C.App. 756, 766, 561 S.E.2d 560, 567 (citations and quotation marks omitted), appeal dismissed and disc. review denied, 356 N.C. 163, 568 S.E.2d 609 (2002), cert. denied, 538 U.S. 982, 123 S.Ct. 1799, 155 L.Ed.2d 673 (2003).
N.C. Gen.Stat. § 7B-507(b) (emphasis added) provides that:
In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:

(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time;
(2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101;
(3) A court of competent jurisdiction has terminated involuntarily the parental rights of the parent to another child of the parent; or
(4) A court of competent jurisdiction has determined that: the parent has committed murder or voluntary manslaughter of another child of the parent; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child or another *498 child of the parent; or has committed a felony assault resulting in serious bodily injury to the child or another child of the parent.
"When a trial court is required to make findings of fact, it must make the findings of fact specially." In re Harton, 156 N.C.App. 655, 660, 577 S.E.2d 334, 337 (2003). "The trial court may not simply recite allegations, but must through processes of logical reasoning from the evidentiary facts find the ultimate facts essential to support the conclusions of law." Id. (citation and quotation marks omitted).
Here, DSS claims that reunification efforts with respondent mother would be futile, and, therefore, the trial court properly concluded that reunification efforts with her should cease. In its order, the trial court made findings of fact addressing the reunification efforts already made by DSS and respondent mother's demonstrated failure to complete her case plan; however, at no point did the trial court link any of these findings to the two prongs set forth in N.C. Gen.Stat. § 7B-507(b)(1). The trial court did not ultimately find, as required by the statute, that: (1) attempted reunification efforts would be futile, or (2) reunification would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time. N.C. Gen.Stat. § 7B-507(b)(1). The case of In re Weiler, 158 N.C.App. 473, 581 S.E.2d 134 (2003), is on point. There, the trial court made findings concerning the respondent mother's "`obstructionist attitude,' `refusal to accept responsibility,' `repetitive switching of jobs and residence,' and `inconsistent behaviors.'" Id. at 479, 581 S.E.2d at 137. Still, "[t]he court found as fact neither that efforts toward reunification with [the] respondent [mother] would be futile nor that such efforts would be inconsistent with the juveniles' health, safety, and need for a permanent home." Id. at 478, 581 S.E.2d at 137. Consequently, this Court concluded that,
in light of its failure to make the findings required by statute, the court's findings do not support its conclusions of law that efforts to reunify respondent with her children should cease and that the "appropriate permanent plan for the juveniles is pursuit of termination of parental rights and adoption."
Id. at 480, 581 S.E.2d at 138. We must reach the same conclusion here since the trial court failed entirely to make the required findings. Id.; see also In re Everett, 161 N.C.App. 475, 480, 588 S.E.2d 579, 583 (2003) (holding that even though the trial court made findings of fact regarding respondent's mental deficiencies, the trial court did not relate those findings to futility of reunification, and, therefore, the trial court "failed to comport with N.C. Gen.Stat. § 7B-507(b)"); see generally In re J.N.S., ___ N.C.App. ___, ___, 704 S.E.2d 511, 519 (2010) (reversing the trial court's dispositional order where the trial court merely incorporated DSS reports and failed to make the findings of fact required by N.C. Gen.Stat. § 7B-507(b)).
We recognize that since Weiler, this Court has upheld dispositional orders where the trial court made findings of fact that supported an ultimate conclusion of law by the trial court that reunification efforts would be futile or inconsistent with the juveniles health, safety, and need for a safe, permanent home. See, e.g., In re T.R.M., ___ N.C.App. ___, ___, 702 S.E.2d 108, 111 (2010) ("We conclude that the foregoing findings of fact support the trial court's conclusion that further reunification efforts were not required on the ground that reunification would be inconsistent with [the juvenile's] 'health, safety, and need for a safe, permanent home within a reasonable period of time[.]'" (quoting N.C. Gen.Stat. § 7B-507(b)(1))); In re N.G., 186 N.C.App. 1, 11, 650 S.E.2d 45, 52 (2007) ("We further conclude that the finding supports the trial court's conclusion that reunification efforts would be futile."), aff'd per curiam, 362 N.C. 229, 657 S.E.2d 355 (2008); see generally In re S.J.M., 184 N.C.App. 42, 645 S.E.2d 798 (2007) (upholding the trial court's order where the findings of fact supported the trial court's conclusion of law that reunification efforts would be futile). In other words, the trial court in those cases related the findings to a conclusion of law that specifically set forth the basis for ceasing reunification efforts under N.C. Gen.Stat. § 7B-507(b). *499 The trial court in this case made no such conclusion. Had it done so, we would have affirmed the order based on the holding of N.G.
As it stands, the trial court recited allegations against respondent mother, but failed to link those allegations to the ultimate findings of fact required by the statute. This Court cannot simply infer from the findings that reunification efforts would be futile or inconsistent with the juvenile's health, safety, and need for a safe, permanent home where the trial court was required to make ultimate findings "specially" based on a "process[] of logical reasoning." Harton, 156 N.C.App. at 660, 577 S.E.2d at 337. We are, therefore, bound by the holding in Weiler, In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), and must reverse the permanency planning order as well as the termination of parental rights order and remand this case to the trial court for further proceedings.
Reversed and Remanded.
Judges STEELMAN and McCULLOUGH concur.
NOTES
[1] Respondent mother preserved her right to review of the permanency planning order by entering a written "Notice to Preserve Right to Appeal" on 19 February 2010.