An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1263

NORTH CAROLINA COURT OF APPEALS

Filed:  15 April 2014

IN THE MATTER OF:

J.M.,                                        Sampson County
    A Juvenile.                              No. 11 JT 9


Appeal by respondent from orders entered 30 March 2012 by Judge Sarah C. Seaton and 24 July 2013 by Judge Leonard W. Thagard in Sampson County District Court.  Heard in the Court of Appeals 31 March 2014.


*Warrick and Bradshaw, P.A., by Frank L. Bradshaw, for petitioner-appellee Sampson County Department of Social Services.*

*K & L Gates, LLP, by Leah D'Aurora Richardson, for guardian ad litem.*

*Mark Hayes for respondent-appellant.*


DAVIS, Judge.

Respondent-mother ("Respondent") appeals from the trial court's orders ceasing reunification efforts and terminating her parental rights to her child "Jill."[1]  We affirm.

Respondent is the mother of Jill.  Jill was born 15 October 2009 in Cumberland County, North Carolina and is the subject of this case.  On 10 November 2010, the Sampson County Department of Social Services ("DSS") received a report that Respondent had inappropriately disciplined Jill's sister.  The report stemmed from an incident in which a school employee discovered a wound on Jill's sister's buttocks.  Pursuant to the investigation, DSS asked Respondent about the wound and how it occurred. Respondent stated  that "she beat the child until the wound got sticky."  However, at trial, Respondent stated that the injury resulted from her sister spanking the child with a board.

During this investigation, DSS visited Respondent at her home and observed that the house was unkempt and in complete disarray.  As a result of the investigation, DSS placed Jill and her sister outside of the home and provided Respondent with a case plan.  DSS asked Respondent to complete a psychological evaluation, attend parenting classes, and attend food and nutrition sessions.  Respondent completed the psychological

---

[1] The pseudonym "Jill" is used throughout this opinion to protect the identity of the child and for ease of reading.

evaluation which yielded a diagnosis of mild mental retardation and depressive disorder. As a result of the evaluation, it was recommended that any contact between Respondent and her children should be directly supervised and that Respondent attend mentoring classes. Respondent failed to complete parenting classes, food and nutrition classes, or the mentoring classes.

On 24 January 2011, DSS filed a petition alleging that Jill was a neglected and dependent juvenile. DSS alleged that Respondent had intellectual limitations, demonstrated an inability to provide a proper home environment, and had poor parenting skills. DSS also alleged that Jill's father was not capable of caring for her. DSS obtained nonsecure custody of Jill and placed her in the home of P.B., who is the paternal grandmother of Jill's sister.

By order filed 13 July 2011, the trial court adjudicated Jill to be neglected and dependent. After holding a disposition hearing, the trial court ordered DSS to retain custody of Jill, with placement continuing with P.B. The trial court conducted subsequent review hearings and, on 30 March 2012, ceased reunification efforts.

On 6 June 2013, DSS filed a motion to terminate Respondent's and the father's parental rights to Jill. DSS

alleged that Respondent's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), N.C. Gen. Stat. § 7B-1111(a)(2) (failure to make reasonable progress), and N.C. Gen. Stat. § 7B-1111(a)(6) (dependency). A termination of parental rights hearing was held on 23 May 2013, after which the trial court found that all three grounds for termination alleged in the petition existed. The court determined that termination of Respondent's parental rights was in the best interests of Jill and entered an order terminating Respondent's rights.[2] Respondent gave timely notice of appeal.

**Analysis**

**I. Cessation of Reunification Efforts**

In her first argument on appeal, Respondent contends the trial court erred when it ceased reunification efforts without making the requisite findings of fact. We disagree.

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's

---

[2] The trial court also terminated the parental rights of Jill's father. Because he did not appeal, that portion of the order is not before us.

conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007). "When a trial court ceases reunification efforts with a parent, it is required to make findings of fact pursuant to N.C. Gen. Stat. § 7B-507(b)." *Id.* at 213-14, 644 S.E.2d at 594. "A trial court may cease reunification efforts upon making a finding that further efforts 'would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]'" *Id*. at 214, 644 S.E.2d at 594 (quoting N.C. Gen. Stat. § 7B-507(b)(1)). Though characterized as a finding or "ultimate finding[,]" *see In re I.R.C.*, 214 N.C. App. 358, 363, 714 S.E.2d 495, 499 (2011), the determination that grounds exist to cease reunification efforts under N.C. Gen. Stat. § 7B-507(b)(1) is, in substance, a conclusion of law that must be supported by adequate findings of fact. *Id.* at 363, 714 S.E.2d at 498-99.

The trial court made the following pertinent findings of fact:

> 10. That the Juvenile has been in the care of the Sampson County Department of Social Services or placed outside the removal home in excess of twelve (12) months and is placed in a structured environment.

11. That the Respondent Mother has not completed her service agreement with the Department of Social Services.

12. That the Respondent Mother suffers from mild mental retardation.

. . . .

16. That the Respondent Mother relies heavily on the oldest Juvenile with caring for the siblings.

17. That the Respondent Mother desires to live in a home by herself.

. . . .

22. That it is not likely that the Juvenile will be returned within the next six (6) months.

. . . .

25. That the Department has made reasonable efforts in this matter to prevent or eliminate the need for placement of the Juvenile with the Department and to reunify this family.

26. That the Department is no longer required to make reasonable efforts in this matter to reunify this family pursuant to N.C. Gen. Stat. 7B-507 as those efforts would clearly be futile or would be inconsistent with the Juvenile's health and safety, and need for a safe, permanent home within a reasonable time.

27. That the Court finds that the conditions which led to the removal of the Juvenile from the Juvenile's home still exists and that a return of the Juvenile to said home would be contrary to the welfare

of the Juvenile.

The trial court concluded:

> 4.    That pursuant to N.C. Gen. Stat. § 7B-507, the Sampson County Department of Social Services in no longer required to make reasonable efforts in this matter to reunify this family as those efforts would clearly be futile or would be inconsistent with the Juvenile's health and safety, and need for a safe, permanent home within a reasonable period of time.

In finding of fact 26 and in conclusion of law 4, the trial court made the ultimate finding required under section 7B-507(b)(1) that reunification efforts "would clearly be futile or would be inconsistent with the Juvenile's health and safety, and need for a safe, permanent home within a reasonable period of time."

Respondent challenges the trial court's ultimate finding on the grounds that it did not specify which prong, "futile or inconsistent[,]" was the basis for ceasing reunification efforts. Respondent argues that the trial court's failure to specify the prong upon which it relied prohibits this Court from applying the proper standard of review. Moreover, Respondent contends that the trial court's use of boilerplate language lifted directly from the statute results in a failure by the

trial court to link any of its findings to the two prongs set forth in N.C. Gen. Stat. § 7B-507(b)(1).

We conclude that unchallenged findings of fact 10 through 17, 21 and 27 support the trial court's ultimate finding that further reunification efforts would be futile and inconsistent with Jill's health and safety and her need for a permanent home within a reasonable period of time. The court found that Jill has been in DSS custody for over twelve months, she has been in a structured environment for this period of time, Respondent relies on others in caring for Jill, Respondent did not complete her services agreement, and Respondent desires to live in a home by herself. These findings are uncontested by Respondent and are thus binding on appeal. *In re S.N.,* 194 N.C. App. 142, 147, 669 S.E.2d 55, 59 (2008), *aff'd per curiam,* 363 N.C. 368, 677 S.E.2d 455 (2009). We conclude that the trial court's findings are sufficient to support its conclusion of law under N.C. Gen. Stat. § 7B-507(b)(1), and we discern no abuse of discretion in the trial court's decision to cease reunification efforts under these circumstances.

## II. Termination of Parental Rights

In her second argument, Respondent asserts that the trial court abused its discretion in concluding that the termination

of Respondent's parental rights was in the best interests of Jill. We disagree.

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). When determining whether it is in the juvenile's best interest for the parent's rights to be terminated, the trial court is required to make written findings regarding the relevant factors enunciated in N.C. Gen. Stat. § 7B-1110(a). *Id.*

"We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Here, the trial court made the following findings of fact to support its conclusion that it was in the best interests of Jill for Respondent's parental rights to be terminated:

> 3.   That the Juvenile has been placed with [P.B.] since January 24, 2011.
>
> 4.   That the Juvenile is currently placed

in the aforesaid home with the Juvenile's sibling.

5. That the Juvenile has adapted well in the current placement.

6. That the Juvenile is thriving in the current placement.

7. That the Juvenile is developing appropriately for her age.

8. That [P.B.] desires to adopt the Juvenile.

9. That [P.B.] and the Juvenile have developed a close bond to one another.

10. That there is little to no bond between the Juvenile and the Respondent Parents.

11. That [P.B.] understands the legal significance and the financial obligation of adopting the Juvenile.

12. That the current permanent plan for the Juvenile is adoption.

13. That the termination of parental rights of the respondents would aid in the completion of the current permanent plan for the Juvenile.

Respondent asserts finding of fact 10 — that there is "little to no bond" between her and Jill — is unsupported by the evidence. To support her argument, Respondent relies on evidence suggesting that a bond did, in fact, exist between Jill and Respondent. Respondent points to her father's testimony that Jill and her sister "have a loving relationship with

[Respondent]" and that they miss Respondent. Respondent also cites Social Worker Dana Sutton's testimony that (1) Jill knows Respondent; (2) Jill and Respondent have a "loving relationship"; and (3) DSS was recommending bi-weekly visits between Respondent and Jill after termination because P.B. "would like for the girls to have contact with their mom." However, Respondent's argument ignores the well-established principle that "[f]indings of fact supported by competent evidence are binding on appeal, despite evidence in the record that might support a contrary finding." *In re C.I.M.*, 214 N.C. App. 342, 345, 715 S.E.2d 247, 250 (2011).

Here, there is competent record evidence supporting the trial court's finding that there is "little to no bond between Juvenile and Respondent." First, it is the adoptive parent who has taken the initiative to involve Respondent in Jill's life by taking Jill once a month to Sampson County to visit with Respondent. Indeed, the fact that Jill – at three years of age — only visits with her mother once per month at her adoptive parent's initiative is evidence supporting the trial court's finding that there is little to no bond between Jill and Respondent. Moreover, competent evidence shows that Jill has

been living with P.B. since she was only one year of age, which is more than half of her life.

While Respondent cites other evidence that may have supported a finding that there was a bond between mother and child, the trial court's finding of fact 10 is supported by competent evidence and is binding on appeal. "It is not the function of this Court to reweigh the evidence on appeal." *Garrett v. Burris*, ___ N.C. App. ___, ___, 735 S.E.2d 414, 418 (2012), *aff'd per curiam*, 366 N.C. 551, 742 S.E.2d 803 (2013).

Therefore, the trial court did not abuse its discretion in determining that termination of Respondent's parental rights was in Jill's best interests. *See In re S.C.R.*, 198 N.C. App. 525, 536, 679 S.E.2d 905, 912 (2009) (holding that trial court's findings reflected reasoned decision based upon statutory factors listed in N.C. Gen. Stat. § 7B-1110(a) and that, therefore, trial court did not abuse its discretion in concluding termination of mother's parental rights was in best interests of child).

## Conclusion

For these reasons, we affirm the trial court's orders ceasing reunification efforts and terminating Respondent's parental rights.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).