In the Matters of: WILLIAM RYAN HARTON, FREDONIA RUTH ADAMS, ANNA LEE ADAMS, and JACK CORBIN ADAMS

No. COA02-492

(Filed 18 March 2003)

**1. Child Abuse and Neglect— neglect—best interest of child—sufficiency of evidence**

A trial court had sufficient evidence to consider in determining the best interests of respondent's children in a neglect case where the court considered information from respondent and

---

IN RE HARTON

[156 N.C. App. 655 (2003)]

DSS reports, and heard testimony from DSS representatives, a school official, and public safety officers.

**2. Child Abuse and Neglect— permanancy planning review order—findings**

The trial court did not make sufficient findings in a permanency planning review order which continued custody of respondent's children with the Department of Social Services where the court merely stated a single evidentiary fact and adopted reports from DSS and the guardian ad litem rather than making findings under the specific criteria set out in N.C.G.S. § 7B-907(b).

Appeal by respondent from order filed 24 October 2001 by Judge Robert M. Brady in Burke County District Court. Heard in the Court of Appeals 11 February 2003.

*Stephen M. Schoeberle for petitioner-appellee Burke County Department of Social Services.*

*Mary R. McKay attorney-advocate for juveniles.*

*Maitri "Mike" Klinkosum for respondent-appellant mother.*

BRYANT, Judge.

Holly Harton Adams (respondent) appeals from an order filed 24 October 2001 from a permanency planning review hearing (Permanency Planning Review Order) continuing custody of respondent's children with the Burke County Department of Social Services (DSS).

On 28 November 2000, DSS filed a juvenile petition alleging respondent's children were neglected in that they were not receiving "proper care, supervision or discipline" and were living "in an environment injurious to their welfare." Specifically, the petition alleged respondent's children had been exposed to numerous incidents of domestic violence between respondent and her live-in boyfriend Mitch Houser, including two separate incidents where Mr. Houser, while intoxicated, bit one of the children in the eye and had attempted to run over respondent with a car. Respondent had subsequently been voluntarily admitted to a hospital after an apparent suicide attempt. The petition also alleged Mr. Houser had threatened the children, and respondent had failed to seek as-

sistance against domestic violence or to separate from Mr. Houser, as DSS had advised.

Following an 11 January 2001 hearing, the trial court in an order filed 22 January 2001 found as fact that the allegations in the petition were true and concluded as a matter of law that respondent's children were neglected juveniles. The trial court entered disposition based on additional findings of fact incorporating the reports of the guardian *ad litem* and DSS. Based on these reports, the trial court further concluded that DSS had made reasonable efforts to prevent the removal of the children from respondent's home, but continuation in the home "would be contrary to [the children's] best interests." As a result, DSS was granted custody over respondent's children. The trial court further ordered respondent to complete a substance abuse assessment, attend group counseling, complete parenting classes, submit to random drug testing, and obtain and maintain stable housing and employment independent of Mr. Houser.

A custody review hearing was held on 5 April 2001, and the trial court filed an order on 2 May 2001 that adopted the updated reports of the guardian *ad litem* and DSS as findings of fact and further found respondent had complied with portions of the 22 January 2001 order, including obtaining a substance abuse assessment, completing parenting classes, and submitting to a random drug test. The trial court also found as fact, however, that Mr. Houser was regularly at respondent's residence, and despite the children's desire for reunification with respondent, respondent had not obtained housing or employment independent of Mr. Houser. Moreover, respondent's problems, including criminal charges against her, continued due primarily to the influence of Mr. Houser. The trial court concluded as a matter of law that DSS had made reasonable efforts to reunite the children with respondent but reunification was not in their best interests. The trial court ordered that DSS continue custody of respondent's children and that respondent and her children have no contact with Mr. Houser.

At the permanency planning review hearing held 18 October 2001, evidence was presented by witnesses called by respondent, including representatives from DSS, a school official, two public safety officers, and Mr. Houser. In addition, respondent testified in her own behalf, was examined by the other parties, and admitted to continuing a relationship with Mr. Houser and having no intentions of separating from him. In the Permanency Planning Review Order, the trial court adopted more recent reports of DSS and the guardian *ad litem* as findings of fact and further found respondent had no intention, at the

time of the custody review or at the permanency planning review, of ending her relationship with Mr. Houser and had lied to DSS about her relationship with him.[1] The trial court concluded as a matter of law that DSS had made reasonable efforts to reunite the juveniles with respondent, but the efforts had been unsuccessful and should cease. Further concluding it would be in the best interests of respondent's children for DSS to continue custody over the children and for all reunification efforts to cease, the trial court then proceeded to outline a permanent plan for the custody and guardianship of each child.

The dispositive issue is whether the trial court's findings of fact in the Permanency Planning Review Order were sufficient to support the trial court's order ceasing all efforts to reunify respondent with her children.

Specifically, respondent argues that the trial court failed to comply with section 7B-907(b) of the North Carolina General Statutes by not considering information from required sources and failing to make the required findings of fact upon the determination that the juveniles were not to be returned to respondent.[2]

Under section 7B-907, "[a] trial court is required to conduct a permanency planning hearing in every case where custody of a child has been removed from a parent" within twelve months of the date of the original custody order. *In re Dula*, 143 N.C. App. 16, 18, 544 S.E.2d 591, 593 (2001), *aff'd*, 354 N.C. 356, 554 S.E.2d 336 (2001) (per curiam); *see* N.C.G.S. § 7B-907(a). At a permanency planning hearing, the trial court must "consider information from the parent, the juvenile, guardian, any foster parent, relative or pre-adoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid . . . in the court's review." N.C.G.S. § 7B-907(b) (2001). If at the conclusion of the permanency planning hearing the trial court determines

---

1. Respondent does not assign error to the specific findings of fact but instead argues those findings are insufficient to support the trial court's order.

2. Respondent also contends the trial court failed to comply with N.C. Gen. Stat. § 7B-906. Section 7B-906, however, governs custody review hearings, *see* N.C.G.S. § 7B-906 (2001), and although section 7B-907 provides a custody review hearing may be combined with a permanency planning review, *see* N.C.G.S. § 7B-907(a) (2001), there is nothing in the record to suggest this was the case here. To the contrary, all indications from the record are that the 18 October 2001 hearing was solely a permanency planning hearing. Accordingly, we do not address respondent's arguments related to section 7B-906.

the children are not to return home, the trial court is required to consider certain criteria and make written findings of fact on the criteria relevant to the case. *Id.* Those criteria are:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

*Id.*

[1] Respondent first contends the trial court erred by failing to require DSS as custodian of the children to present evidence instead of relying only on the written reports of DSS representatives. The record, however, reflects DSS representatives were called as witnesses by respondent and cross-examined by an attorney from DSS and counsel for other parties, including the guardian *ad litem*. The trial court considered information from respondent, DSS reports, and heard testimony from DSS representatives, a school official, and public safety officers. Further, the DSS reports themselves contain information from relevant sources under section 7B-907(b). Thus, we conclude the trial court had sufficient evidence to consider in determining the best interests of respondent's children. *See In re Shue,* 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (essential requirement in

a child custody hearing is the presentation of sufficient evidence to determine what is in the best interests of the juveniles).

**[2]** Respondent further argues the trial court failed to make the required findings of fact under section 7B-907(b). We agree. Section 7B-907(b) requires a trial court to make written findings on all of the relevant criteria as provided in the statute. *See* N.C.G.S. § 7B-907(b). When a trial court is required to make findings of fact, it must make the findings of fact specially. *See In re Anderson*, 151 N.C. App. 94, 96, 564 S.E.2d 599, 601 (2002); *see also* N.C.G.S. § 1A-1, Rule 52 (2001) ("findings by the court"). The trial court may not simply "recite allegations," but must through " 'processes of logical reasoning from the evidentiary facts' " find the ultimate facts essential to support the conclusions of law. *Anderson*, 151 N.C. App. at 97, 564 S.E.2d at 602 (quoting *Appalachian Poster Advertising Co. v. Harrington*, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988)).

In this case, the trial court in its findings of fact in the Permanency Planning Review Order found that respondent had no intention of separating from Mr. Houser and adopted DSS and guardian *ad litem* reports as the remaining facts. The trial court, however, made no findings of fact under the specific criteria provided in section 7B-907(b). By stating a single evidentiary fact and adopting DSS and guardian *ad litem* reports, the trial court's findings are not "specific ultimate facts . . . sufficient for this Court to determine that the judgment is adequately supported by competent evidence." *Anderson*, 151 N.C. App. at 97, 564 S.E.2d at 602 (internal quotations omitted) (citation omitted). Accordingly, we must vacate the Permanency Planning Review Order and remand this case for the trial court to specially make the required findings of fact under N.C. Gen. Stat. § 7B-907(b).

Vacated and remanded.

Judges HUNTER and ELMORE concur.