IN THE MATTER OF: R.P., P.P. and M.P., Minor Children.
No. COA04-38
North Carolina Court of Appeals.
Filed December 21, 2004.
This case not for publication
Pitt County Nos. 00 J 206, 00 J 207, 00 J 208.
Pitt County Legal Department, by Janis Gallagher, for petitioner-appellee.
Michael J. Reece for respondent-appellant.
THORNBURG, Judge.
Respondent appeals a permanency planning order that continued custody of her children with the Pitt County Department of Social Services (DSS) and changed the permanent plan for the children to one of adoption.
Prior to 1997, respondent lived in Connecticut. While living in Connecticut, respondent had two children, R.P., born 21 June 1990, and D.P., born 11 July 1993. D.P. tested positive for cocaine at his birth. D.P. was placed in foster care and R.P. was placed with respondent's nephew. After her nephew was incarcerated, respondent and R.P. moved to North Carolina in July 1997. Respondent's parental rights to D.P. were terminated by the Connecticut Superior Court on 14 January 1998. DSS became involved with respondent in July 1997, based on a report that was unsubstantiated. A second report was received on 22 June 1998, that alleged that respondent was neglecting R.P. This report was substantiated and DSS began offering respondent services in September 1998. DSS continued to receive reports that respondent was not addressing concerns about R.P.'s schooling, that she was leaving R.P. with people and in stores without returning, that respondent was using cocaine and that P.P., born 11 August 1999, and M.P., born 10 October 2000, were both born with cocaine in their systems.
Prior to her arrest in November 2000, DSS assisted respondent in obtaining stable housing. DSS helped respondent to address R.P.'s issues at school. DSS worked with respondent, helping her with money management issues, developing treatment plans and teaching respondent how to provide for R.P.'s physical, medical and educational needs. DSS also obtained a mentor for R.P. Despite DSS's help, respondent tested positive for cocaine on five occasions in 2000. She failed to follow through with substance abuse treatment and failed to maintain stable employment due to absenteeism and drug use.
In November 2000, respondent was arrested on numerous felony and misdemeanor charges. Respondent's neighbors, the Stephens, began caring for the children upon respondent's arrest. On 12 December 2000, DSS filed petitions alleging that the children were neglected and dependent children. Respondent was incarcerated from November 2000 until January 2001. The children continued to reside with the Stephens after respondent's release. In January 2001, respondent was evicted from her apartment. She tested positive for cocaine usage in March of 2001. Respondent did not attend some of her scheduled visits with the children. DSS had trouble contacting respondent during this time because respondent did not inform DSS of her current address. On 4 October 2001, the children were adjudicated neglected, pursuant to respondent's consent at a hearing conducted on 18-19 July 2001.
Between the July hearing and the review hearing conducted on 20 September 2001, respondent continued to use cocaine and engage in criminal activity, failed to participate in mental health and substance abuse treatment, failed to maintain employment or housing and failed to visit consistently with her children. All visitation with the children was suspended in September 2001, due to respondent's continued cocaine usage. Respondent was arrested again on 20 September 2001, immediately following the review hearing, and incarcerated until May 2002.
On 14 March 2002, a review hearing was conducted while respondent was incarcerated. The trial court ordered that legal custody of the children remain with DSS. In order for the permanent plan to remain reunification with respondent, the trial court ordered respondent, upon her release, to attend an inpatient drug clinic, attend Narcotics Anonymous, provide DSS with a new address, avoid any additional criminal charges or incarceration,obtain negative results on random drug screens, submit to any search requested by DSS, law enforcement or the guardian ad litem and show general improvement. The trial court also ordered a home study of the maternal grandmother's home in New York.
The matter was reviewed at a permanency planning hearing that was conducted on 8 August 2002. The hearing was continued until the home study in New York could be completed. The hearing resumed on 7 November 2002 and 14 November 2002. On 18 March 2003, the trial court entered an order relieving DSS of further reunification efforts and changed the children's permanent plan to one of adoption. Respondent appeals.
In this case, respondent has not taken exception to any of the findings of fact made by the trial court. Respondent argues on appeal that: (1) the trial court erred in concluding that DSS had made reasonable efforts to eliminate the need for placement; (2) the trial court erred in concluding that it was in the best interest of the children to remain in DSS custody; and (3) the trial court erred in ordering that the permanent plan be changed to adoption.
Respondent contends that DSS did not make reasonable efforts to work with her to return the children to her custody and that it was error for the trial court to conclude that reasonable efforts had been made. "Reasonable efforts" is a term of art defined by statute. N.C. Gen. Stat. § 7B-101(18) defines "reasonable efforts" as:
The diligent use of preventive or reunification services by a department ofsocial services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.
N.C. Gen. Stat. § 7B-101(18) (2003).
As we noted before, this is an appeal from a permanency planning order pursuant to N.C. Gen. Stat. § 7B-907. Where "the court continues the juvenile's placement in custody or placement responsibility of a county department of social services, the provisions of G.S. 7B-507 shall apply to any order entered under this section." N.C. Gen. Stat. § 7B-907(c) (2003). N.C. Gen. Stat. § 7B-507(a) states:
An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order:
. . . .
(2) Shall contain findings as to whether a county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined under subsection (b) of this section that such efforts are not required or shall cease . . . .
N.C. Gen. Stat. § 7B-507(a) (2003). The determination of whether "reasonable efforts" have been made by DSS is a conclusion of lawas it requires the exercise of judgment. In re Helms, 127 N.C. App. 505, 510-11, 491 S.E.2d 672, 676 (1997).
"When a trial court is required to make findings of fact, it must make the findings of fact specially." In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003). The trial court's findings must consist of more than a recitation of allegations; the trial court must find ultimate facts necessary to support the conclusions of law through "processes of logical reasoning from the evidentiary facts." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (quoting Appalachian Poster Advertising Co. v. Harrington, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988)). Moreover, "[i]n all actions tried upon the facts without a jury . . ., the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2003).
In the instant case, the order issued by the trial court lacks any findings of fact or conclusions of law that DSS made "reasonable efforts" in preventing or eliminating the placement of respondent's children. The record is replete with competent evidence that would have supported findings of fact regarding DSS's efforts in this case, which in turn would have supported the conclusion made by the trial court. However, the trial court failed to make even one direct finding regarding the services that DSS provided to respondent during the nearly four-year period in which DSS had been involved with this family. Therefore, we vacatethe permanency planning review order and remand this case to the trial court to specially make the required findings of fact and conclusions of law under N.C. Gen. Stat. § 7B-507(b). Due to our disposition of this case, we do not reach the issues of whether the trial court erred in concluding that it was in the best interest of the children to remain in DSS custody and in ordering that adoption be the permanent plan for the children.
Vacated and remanded.
Judges WYNN and HUNTER concur.
Report per Rule 30(e).