An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-901
NORTH CAROLINA COURT OF APPEALS

Filed: 6 January 2015

IN THE MATTER OF:

A.B.                                    Cumberland County
                                        No. 12 JA 311


Appeal by respondent mother from order entered 9 May 2014 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 3 December 2014.

Christopher L. Carr and James D. Dill for petitioner-appellee Cumberland County Department of Social Services.

Assistant Appellate Defender Joyce L. Terres for respondent-appellant mother.

Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for guardian ad litem.

DIETZ, Judge.

Respondent mother appeals from the trial court's permanency planning order awarding legal and physical custody and guardianship of A.B. ("Abby")[1] to the juvenile's maternal great aunt. Respondent argues that the trial court did not make

_____

[1] The parties agreed to the use of this pseudonym.

sufficient findings in its permanency planning order. For the reasons set forth below, we reject this argument and hold that the trial court's fact findings satisfy the statutory criteria. Accordingly, we affirm the trial court's order.

## Facts and Procedural History

On 22 May 2012, the Cumberland County Department of Social Services (DSS) filed a juvenile petition alleging that Abby and her two cousins were neglected, seriously neglected, and dependent. At the time DSS filed the petition, Abby lived with her mother, grandmother, aunt, and two cousins. In the juvenile petitions, DSS alleged that the family lived without electricity from 10 October 2011 to 8 November 2011 and that the juveniles frequently asked neighbors for food. DSS further alleged that Abby's cousin was withdrawn from her public school in September 2010 and had not been enrolled in a public school since that date. Abby's grandmother stated that the children were homeschooled, but Respondent could not produce any documentation or proof of proper homeschooling. DSS also alleged that the family had a history of unstable housing and were uncooperative with DSS since 2011.[2]

---

[2] The family unit was also the subject of a DSS referral in 2011.

DSS was unable to locate the family until 18 June 2012 when they were found near the Cape Fear Valley Medical Center. Abby and her cousins were disheveled, dirty, and smelled bad. The three children told social workers that they had not eaten all day. The juveniles also stated that they had been sleeping in a storage facility and on the floor of the nearby hospital, that they bathed in the hospital bathroom, and that they had to resort to stealing food from hospital carts to get enough to eat. DSS obtained non-secure custody of Abby and her cousins and the juveniles were placed with their maternal great aunt.

At a hearing on 7 January 2013, the parties stipulated that Abby and her cousins were dependent and the allegations of neglect and serious neglect were dismissed. The trial court adjudicated Abby dependent and found that "among the issues which led to the removal of the juveniles was the unstable lifestyle of the Respondents, lack of appropriate housing, failure to obtain appropriate medical care, and failure to [provide] appropriate education for the juveniles." Respondent was ordered to submit to a psychological evaluation and a parenting assessment, to successfully complete life skills training, and "to obtain and maintain stable and suitable housing, to include more than a month-to-month lease."

Respondent was granted one hour of supervised visitation with Abby, to be supervised by the maternal great aunt, and to take place at a public location as agreed upon by both parties.

On 27 June 2013, the trial court entered an order following a review hearing held on 29 April 2013. The court found that there was no substantial change since the entry of the adjudication order and that the issues that led to the removal of the juveniles had not been alleviated. The trial court also found that Respondent provided insufficient documentation of counseling services to assess her progress and still possessed a month-to-month lease for housing.

On 31 January 2014, the trial court entered a permanency planning order after a hearing held 26 August 2013. The court again found that there had been no substantial change in the case and the issues of unstable housing, inappropriate care and supervision, and lack of appropriate alternative child care arrangements had not been alleviated. DSS's report, which was incorporated into the trial court's order, stated that Respondent was facing eviction from her home after falling four months behind in rent. The court also found that Respondent had failed to maintain contact with the social worker and had cancelled face-to-face appointments. The trial court further

found that it would not be possible for the juveniles to be returned home at that time or within the next six months as the mothers were still "in need of services to assist in alleviating the conditions which led to the removal of the juveniles." Abby also told the social worker that "although she misses her Mother, she is happy with living with her Aunt and would rather remain there."

On 9 May 2014, the trial court entered another permanency planning order. The court incorporated into the order the contents of both the DSS and guardian ad litem reports, as well as the findings from all previous orders. The trial court again found that it was not possible for the juveniles to be returned home immediately or within the next six months and awarded legal and physical custody and guardianship of Abby and her cousins to their maternal great aunt. The trial court also ordered that DSS be allowed to close Abby's juvenile case file and "shall be relieved of further duties in this matter." The order stated that no further judicial reviews were necessary, "unless upon a Motion for Review filed by any party, or upon the Court's own motion." Respondent timely appealed.

## Analysis

### I.   Findings Concerning Reunification Services

Respondent first argues that the trial court erred by failing to make sufficient findings as to services offered to reunite Abby with Respondent.  We disagree.

On appeal, the "review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004).  "If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal." *Id.* Respondent does not challenge the trial court's findings but contends that those findings are insufficient.  Thus, the trial court's existing findings are binding on appeal and we review whether those findings support its conclusions.  *In re J.M.W.*, 179 N.C. App. 788, 792, 635 S.E.2d 916, 919 (2006).

Pursuant to N.C. Gen. Stat. § 7B-906.1, at a permanency planning hearing the trial court "shall consider the following criteria and make written findings regarding those that are relevant."  N.C. Gen. Stat. § 7B-906.1(d) (2013).  Among the criteria listed, the court shall consider reunification services, visitation reports, whether efforts to reunite the

child and parent would be futile, placement reports, and any other criteria the court deems necessary. *Id.*

Here, the trial court found

> [t]hat the [c]ourt approves of the permanent plan of guardianship with relatives, and finds that the plan is consistent with the juveniles' best interests. The [c]ourt further finds that *[DSS] has been making reasonable efforts*, as required by N.C. Gen. Stat. §§ 7B-507 and 7B-906, *to eliminate the need for continued placement of the juveniles outside of the home* to include, but not limited to: monitoring the juveniles' placements; coordinating services for the juveniles; and ensuring that the needs of the juveniles are being met.

The Juvenile Code defines "reasonable efforts" as:

> *[t]he diligent use of preventive or reunification services* by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time. If a court of competent jurisdiction determines that the juvenile is not to be returned home, then reasonable efforts means the diligent and timely use of permanency planning services by a department of social services to develop and implement a permanent plan for the juvenile.

N.C. Gen. Stat. § 7B-101(18) (2013).

Respondent argues that the court's finding quoted above is insufficient. Although it states that DSS is "making reasonable efforts . . . to eliminate the need for continued placement of

the juveniles outside the home," and the statutory term "reasonable efforts" includes "the diligent use of preventive or reunification services," Respondent contends that the findings are insufficient because they do not list the particular reunification services that were offered. Respondent argues that without specifically identifying those services in its findings, the findings do not comply with N.C. Gen. Stat. § 7B-906.1(d).

We disagree. The trial court's findings of fact must only "be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." *In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (internal quotation marks and citation omitted). In making fact findings, a trial court "must through processes of logical reasoning from the evidentiary facts find the ultimate facts essential to support the conclusions of law." *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) (internal quotation marks and citations omitted).

Here, the trial court did not simply adopt the DSS and guardian ad litem reports, but made its own additional findings pertaining to the relevant factors laid out in N.C. Gen. Stat. § 7B-906.1(d). Among those findings, the trial court expressly

found that DSS made "reasonable efforts" to eliminate the need for continued placement, a statutory term that includes use of "preventive or reunification services." N.C. Gen. Stat. § 7B-101(18).

This finding is supported by competent evidence presented at the hearing. The social worker testified that she provided housing information to Respondent in the summer of 2013 and again the day before the February hearing. DSS's report also stated it arranged for Respondent to attend parenting classes—which she did—and further recommended that she continue individual counseling.

Accordingly, we hold that the trial court's findings are sufficiently specific to show that the trial court considered the necessary statutory factors, including reunification services, and made written findings regarding those that are relevant, as required by N.C. Gen. Stat. § 7B-906.1(d). We therefore reject Respondent's argument on this issue.

## II. Finding Concerning Possible Reunification Within Six Months

Respondent next argues that the trial court erred by failing to make a specific finding on whether it was possible for Abby to be returned to Respondent within six months and why

such placement was not in Abby's best interest, as required by N.C. Gen. Stat. § 7B-906.1(e)(1). We disagree.

In the permanency planning order, the trial court found

> That it is not possible for the juveniles to be returned home immediately, or within the next six (6) months, inasmuch as the Respondent Mothers remain in need of services to assist in alleviating the conditions which led to the removal of the juveniles. That return of the juveniles to the custody of the Respondents would be contrary to the welfare and best interests of the juveniles in that the juveniles remain in need of more care and supervision than can be provided by the Respondents.

The court also found that "among the issues that led to the removal of the juveniles was unstable housing; that continues through today's date."

Respondent first argues that the court erred because it combined all the juveniles together and did not make separate findings as to each juvenile. But at the time of the DSS referral, and during the entire two years after DSS's involvement, Respondent lived with her sister and mother. Respondent also has no income to obtain her own housing. Respondent contends that Abby was removed from the home for different reasons than her cousins because one of Abby's cousins also was found to not be receiving proper medical care for her seizure disorder. However, DSS's report stated that the

educational neglect of *both* Abby and her cousin was concerning and that the *children's* immunizations were not kept current. Thus, Abby was removed from the home for reasons that were equally applicable to her and her two cousins, and which had not been alleviated at the time of the hearing. The family was living together as a unit and the court did not err by not including separate findings as to each juvenile.

Respondent next argues that the above-referenced findings are not sufficiently specific because they do not identify the particular services needed by Respondent and do not clarify how the conditions that led to the removal still persisted at the time of the hearing. But as explained above, the trial court need not reference every underlying piece of evidence supporting its fact finding. Instead, the trial court must "from the evidentiary facts find the ultimate facts essential to support the conclusions of law." *Harton*, 156 N.C. App. at 660, 577 S.E.2d at 337.

Here, the applicable statute required the trial court to make findings about whether it was "possible for the juvenile to be placed with the parent within the next six months and, if not, why such placement is not in the juvenile's best interests." N.C. Gen. Stat. § 7B-906.1(e)(1). The trial court

made the precise findings required by the statute. If Respondent believed those findings were not supported by competent evidence in the record, she should have challenged them on the ground that they were unsupported by the record (she did not). But even if Respondent had done so, we readily would have concluded that the findings are supported by competent evidence.

The trial court expressly found that unstable housing was among the issues that led to the removal of Abby and that the unstable housing continued through the date of the order at issue. Additionally, the permanency planning order incorporated all previous orders and their findings as well as the DSS and guardian ad litem reports. In the DSS report, the social worker indicated that prior to the February 2014 hearing, Respondent had moved again and left no forwarding address.

During the hearing, the social worker testified that "in the past two years, [DSS] has not seen the progress on the part of the Respondent mother that would make them feel comfortable allowing the child to go back to her custody and be with her permanently." The social worker also stated in the report that "it is not possible for the juveniles to return home immediately or within the next six months. [Respondent] and [her sister]

continue to have unstable housing and have not actively participated in their case plan reviews for the past six months."

The court also found that the placement with the great aunt was going well, Abby was receiving proper care and supervision, the placement was stable, and that "the continuation in this placement would be consistent with the best interests of the juveniles." Abby also was doing well in school and expressed a desire to continue living with her great aunt.

In short, the trial court satisfied the statutory criteria by finding that reunification was not possible within the next six months and that reunification would be contrary to the child's best interests. The court's fact findings also are supported by competent evidence in the record. Thus, we reject Respondent's argument on this issue.

## III. Visitation in a "Public Location"

Finally, Respondent argues that the trial court erred by ordering that visitation between Respondent and Abby be at a "public location" as agreed upon by the parties, without specifying in the order the particular "public location" at which visitation must occur. We disagree.

Pursuant to N.C. Gen. Stat. § 7B-905.1, if the juvenile is

placed in the guardianship of a relative, "any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised." N.C. Gen. Stat. § 7B-905.1(c) (2013). Here, the trial court complied with Section 7B-905.1(c) by specifying that Respondent "be allowed a minimum of one (1) hour supervised visitation every Saturday from 4:00 p.m. until 5:00 p.m. . . . to be supervised by the Maternal Great Aunt . . . at a public location as agreed upon by the parties."

Respondent argues the trial court erred because the order did not state the specific place of visitation, relying on *In re Stancil*, 10 N.C. App. 545, 179 S.E.2d 844 (1971). But *Stancil* is readily distinguishable from the facts here. In that case, the court did not specify *any* visitation plan and left it to the custodian of the child to determine the time, place, and conditions in which the mother may visit with her child. *Id.* at 552, 179 S.E.2d at 849. Here, Respondent was given a specific day and time to visit with Abby and was told the visitations must be in a public location supervised by the great aunt.

Respondent contends that Abby's guardian could deny her visitation by stating that they could not agree on a place to visit. But there is no evidence that Respondent has ever been

denied visitation or that designating a visitation place has been an issue. Indeed, the record indicates that Respondent has been visiting with Abby weekly and that the visits are going well. Additionally, our Court previously has upheld an order stating that visitation shall be in a "public place." *In re A.A.*, 176 N.C. App. 189, 625 S.E.2d 917, 2006 WL 387972 (2006) (unpublished). And, to the extent the parties are unable to agree on an appropriate "public location" at some future date, Respondent can return to the trial court to resolve the issue. Accordingly, we hold that the trial court's visitation plan complies with N.C. Gen. Stat § 7B-905.1(c).

### Conclusion

The trial court made sufficiently specific findings in its permanency planning order and those findings are supported by clear and convincing evidence. The court's findings, in turn, support the trial court's conclusions of law. Therefore, the trial court's order granting physical and legal custody and guardianship of Abby to her maternal great aunt is affirmed.

AFFIRMED.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).