IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-145

Filed 5 March 2025

Durham County, No. 23 CVD 500256

YANLI JAY, Plaintiff-Appellee,

v.

GARY WAYNE JAY, Defendant-Appellant.

Appeal by defendant from order entered 17 August 2023 by Judge James T. Hill in Durham County District Court. Heard in the Court of Appeals 29 August 2024.

*Law Offices of Matthew Charles Suczynski, by Matthew C. Suczynski, for defendant-appellant.*

*No brief filed for plaintiff-appellee.*

ARROWOOD, Judge.

On 17 August 2023, the trial court entered a Domestic Violence Protective Order ("DVPO") in favor of Yanli Jay ("plaintiff") against her husband Gary Jay ("defendant"). Defendant filed notice of appeal on 15 September 2023.

I. Background

The parties were originally married on 15 April 2016 and separated in August 2022. Plaintiff filed a complaint and motion for DVPO on 7 June 2023, complaining of sexual abuse on several occasions, including 2 May and 9 May 2023,

April 2023, 28 March 2023, 2 March 2023, and August 2022. A hearing on the motion took place on 17 August 2023, at which both parties testified.

Plaintiff stated that on 28 March 2023, defendant came to her house and without her approval, took his pants off in the living room and said "he was going to have sex with [her]." Plaintiff said "No, you can't do that[,]" but defendant "stuck his hand into [her] vagina[,]" which made plaintiff bleed. Plaintiff further stated that defendant "squeeze[d] [her] nipples[,]" which continued to hurt for two weeks. Plaintiff stated that defendant was violent "[e]very time we had the sex, it wasn't like we were husband and wife. It was like he was venting something, and it makes – it really hurt me." Plaintiff also testified that defendant rarely called her by her name, instead referring to her as "idiot, moron, bullshit, stupid, full of baloney." Plaintiff's Exhibit 1 was admitted as evidence and included the following text message exchange:

> Plaintiff:  Celebrate Chinese New Year
> Defendant:  You are looking better
> Now if you only really liked learning and were
> really interested in a real sex life
> See my sentence above- that is what I need
> aside from the beauty of the woman I married

Defendant testified that he had never sexually assaulted plaintiff in any way. Defendant confirmed that he had been with plaintiff on a number of the aforementioned dates, and that he had sex with her "[t]hree or four" times in the spring of 2023, but he described different circumstances than plaintiff's testimony.

Defendant stated that the "[l]ast two years of the marriage were essentially nil. We had had sexual relations . . . six times in a year for two years. That's what, when I talk to patients, we call a dead bedroom." Despite this, defendant testified that he wanted to get back together with plaintiff and took her out to dinner in early April 2023. Defendant stated that after dinner, plaintiff suggested having sex and said "I did not treat you well. I want to treat you better now."

Defendant described subsequent dates in the following weeks: he averred that plaintiff sent him a text after one date "stating that she loved [him] and cherished [him] and all those things[,]" and gave him a pair of slippers after another. On a fourth date, however, defendant stated they did not have sex because he "was very depressed because [he] had been scammed on the computer and . . . lost a good bit of money from it[.]" Defendant stated that on 2 May he "just made love to her; she did not make love to me at all[,]" and on 9 May, plaintiff told him that she did not want to talk to or see him again. Defendant testified that he brought her a bouquet of roses and left.

After closing statements, the trial court found by the greater weight of the evidence that plaintiff had proven her case and subsequently entered the DVPO, effective for one year until 17 August 2024. The order included as attachments a typewritten statement by plaintiff signed on 7 May 2023 and plaintiff's Exhibit 1.

On 28 August 2023, defendant filed a motion to set aside the order and to show cause, arguing that plaintiff had presented altered evidence at trial. Defendant

attached a screenshot of the text message exchange between the parties from Exhibit 1 with two messages that had been omitted from the exhibit:

> Plaintiff: Celebrate Chinese New Year
> [Smile Emoji]
> Defendant: You are looking better
> Now if you only really liked learning and were really interested in a real sex life
> Plaintiff: Gary, I still love you.
> Defendant: See my sentence above- that is what I need aside from the beauty of the woman I married

Following a hearing on 15 September 2023, the trial court denied defendant's motion. In the order denying the motion to set aside, the trial court found that "[i]t does appear that plaintiff's evidence regarding text was not completely accurate. Court is not convinced that it was done by plaintiff to willfully mislead the court. Even if this evidence is stricken, there is still ample evidence for the entry of the DVPO." Regarding defendant's motion to show cause, the trial court found that "[e]ven though the text given by plaintiff and testified to by plaintiff was not a complete and accurate text, the court does not feel the conduct was willful."

Defendant filed notice of appeal on 15 September 2023.

## II.     Discussion

Defendant argues there was insufficient evidence to support the findings made by the trial court in the DVPO. We disagree.

In reviewing a DVPO, we must determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of

law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal." *Burress v. Burress*, 195 N.C. App. 447, 449–50 (2009) (citation omitted).

"To support entry of a DVPO, the trial court must make a conclusion of law 'that an act of domestic violence has occurred.'" *Kennedy v. Morgan*, 221 N.C. App. 219, 223 (2012) (quoting N.C.G.S. § 50B-3(a)). N.C.G.S. § 50B-1(a) defines domestic violence as any of the following acts between parties who have shared a "personal relationship":

> (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
> (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
> (3) Committing any act defined in G.S. 14-27.21 through G.S. 14-27.33.

N.C.G.S. § 50B-1(a) (2022). Under N.C.G.S. § 50B-3, a trial court judge is required to issue a DVPO whenever it determines an act of domestic violence has occurred. *See D.C. v. D.C.*, 279 N.C. App. 371, 373–74 n.2 (2021) ("[I]f a trial court determines that an act qualifying as domestic violence occurred the trial court is required to issue a DVPO.").

Here, in its DVPO the trial court found that on 2 May 2022, defendant committed acts towards plaintiff satisfying all three categories under G.S. 50B-1(a). The trial court found that on 2 May 2022, defendant caused or attempted to cause

bodily injury to plaintiff, placed her in fear as to inflict substantial emotional distress, and that defendant committed acts constituting second-degree rape under N.C.G.S. § 14-27.22.

In making its findings, the trial court relied on plaintiff's written statement attached to her initial complaint, in which she described how defendant forced her against her will to allow him to engage in rough sex with her on 2 May 2022 that left her injured. The trial court attached this written statement to its DVPO as an exhibit. The trial court also considered plaintiff's testimony at trial, in which she described the events. She described a sexual encounter with defendant which occurred on 28 March 2022 which would support the granting of the DVPO, including an act of sexual intercourse with defendant against her will resulting in injury. She also testified that the sex they had was "never normal" and always took a violent form that "really hurt" her and often consisted of acts plaintiff did not want to partake in.

The dissent cites *Hensey v. Hennessy*, 201 N.C. App. 56 (2009) for the proposition that this Court has approved of incorporating by reference allegations from a complaint as findings of fact in an *ex parte* DVPO, but not in a one-year DVPO. The dissent contends that the trial court effectively delegated its fact-finding duty to plaintiff by relying on plaintiff's typewritten statement and Exhibit 1, which was later found to have been altered.

However, in *Hensey*, this Court did address a one-year DVPO, specifically noting that an *ex parte* DVPO and a one-year DVPO were "independent of one

another[.]" *Id.* at 66. The Court proceeded to review under N.C.G.S. § 50B-3, and "whether there was competent evidence to support the trial court's findings of fact[.]" *Id.* at 67 (citing *Burress*, 195 N.C. App. at 449–50). This Court reversed the one-year DVPO "as no evidence was presented before the trial court at the 10 March 2008 hearing[.]" *Id.* at 69.

Here, unlike *Hensey*, the trial court *was* presented with evidence to support the findings in the DVPO. In addition to the documentary evidence, the trial court heard testimony from both parties. Plaintiff stated that on 28 March 2023, defendant came to her house and without her approval, took his pants off in the living room and said "he was going to have sex with [her]." Plaintiff said "No, you can't do that[,]" but defendant "stuck his hand into [her] vagina[,]" which made plaintiff bleed. Plaintiff further stated that defendant "squeeze[d] [her] nipples[,]" which continued to hurt for two weeks. Plaintiff stated that defendant was violent "[e]very time we had the sex, it wasn't like we were husband and wife. It was like he was venting something, and it makes – it really hurt me." Plaintiff also testified that defendant rarely called her by her name, instead referring to her as "idiot, moron, bullshit, stupid, full of baloney."

"Where the trial court sits as the finder of fact, 'and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial [court].' " *Brandon v. Brandon*, 132 N.C. App. 646, 651 (1999) (quoting *Electric Motor & Repair Co. v. Morris & Associates,* 2

N.C. App. 72, 75 (1968)).

> [This Court] can only read the record and, of course, the written word must stand on its own. But the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words.

*Id.* (quoting *State v. Sessoms,* 119 N.C. App. 1, 6 (1995)). The trial court's findings "turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court." *Id.* at 652 (citation omitted). Accordingly, where the trial court's findings of fact are supported by competent evidence, they are binding on appeal. *Id.*

The trial court received evidence and heard testimony from both parties and had ample opportunity to consider the credibility of both parties. Although Exhibit 1 was determined to have been altered, the trial court specifically found that it was "not convinced that it was done by plaintiff to willfully mislead the court[,]" and even if the exhibit were entirely stricken from the record, "there is still ample evidence for the entry of the DVPO."

Based on the foregoing, we conclude that there was competent evidence to support the trial court's findings of fact and order through plaintiff's written statement and testimony at trial.

## III.    Conclusion

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Judge WOOD concurs.

Judge CARPENTER dissents by separate opinion.

No. COA24-145 – *Jay v. Jay*

CARPENTER, Judge, dissenting.

The events Plaintiff alleged in her typewritten statement are deeply troubling. As deplorable as Plaintiff's allegations are, it remains our duty as an error-correcting court to ensure that our trial courts adhere to established legal principles and faithfully execute their responsibilities. Anything less would be a disservice to the citizens of North Carolina. Were we to approve of the trial court's incorporation and adoption of Plaintiff's unverified statement as its findings of fact, as the majority implicitly does, we will be incentivizing behavior that violates the North Carolina Rules of Civil Procedure. What we permit, we promote. Therefore, I respectfully dissent.

The majority concludes there was competent evidence to support the trial court's findings which, in turn, support the conclusion that an act of domestic violence occurred. In reaching this conclusion, my colleagues place considerable emphasis on Plaintiff's testimony which, in their view, supported issuance of the DVPO (the "Order"). I agree with my colleagues that the evidence, viewed in isolation, could have supported findings identifying the basis for an act of domestic violence. Instead, I take issue with the trial court's purported findings themselves; not in terms of their evidentiary support but rather their sufficiency under Rule 52.

Although this Court has previously approved of a trial court incorporating by reference allegations from a *verified* complaint as findings of fact in an *ex parte* DVPO, due to the need for an expedited resolution, we have yet to address whether

this practice is permissible in an order issuing a one-year DVPO. *See Hensey v. Hennessy*, 201 N.C. App. 56, 64, 685 S.E.2d 541, 547 (2009) (emphasis added).

Under the facts and circumstances of this case, the trial court failed to demonstrate that it genuinely engaged in the fact-finding process as dictated by Rule 52. The trial court's incorporation of Plaintiff's allegations from her unverified complaint into the Order constitute an improper delegation of its fact-finding duty, impeding our review under the applicable standard of review. *See In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004), *superseded on other grounds by statute*, 2013 N.C. Sess. Law 129, § 25 (N.C. 2013).

Simply put, the trial court adopted Plaintiff's statement as its findings of fact, instead of making findings of its own based on the evidence. In my view, the trial court's "findings" should not be considered findings at all. Therefore, this Court is not in a position to even consider whether Plaintiff's testimony supports the findings because the trial court improperly delegated its fact-finding duty. Accordingly, I would vacate the Order and remand this matter for additional findings in compliance with Rule 52.

## I. Background

On 7 June 2023, Plaintiff sought an emergency *ex parte* DVPO against Defendant by filing an unverified complaint and motion for DVPO for events Plaintiff alleged occurred throughout March and May of 2023. Plaintiff attached to her Complaint a typewritten statement alleging Defendant sexually, physically, and

emotionally abused her in the two years before she and Defendant separated, as well as on several occasions in the months before Plaintiff filed her complaint. Specifically, Plaintiff alleged that she and Defendant engaged in non-consensual, violent intercourse on 2 May 2023, which caused Plaintiff physical pain. The trial court issued the *ex parte* DVPO on 7 June 2023. On 17 August 2023, the trial court conducted a hearing to determine whether to issue the one-year DVPO.

Plaintiff sought to admit a screenshot of a text message exchange between Plaintiff and Defendant. While laying the foundation for authentication of the screenshot, Plaintiff testified that the image had *not* been modified in any way and was a fair and accurate depiction of the conversation she had with Defendant. Defense counsel objected, stating, "I'm going to object. I have a transcript of that conversation, and there is a line missing." Counsel consulted regarding the screenshot and then, when Plaintiff's counsel moved to enter the screenshot into evidence, defense counsel objected again stating, "I'm going to object and ask questions later, Your Honor."

The screenshot Plaintiff presented at trial depicted the following text exchange between Plaintiff and Defendant.

> **Plaintiff:** [Image] Celebrate Chinese New Year
> **Defendant:** You are looking better
> **Defendant:** Now if you only really liked learning and were really interested in a real sex life
> **Defendant:** See my sentence above- that is what I need aside from the beauty of the woman I married.

CARPENTER, J., *dissenting.*

At the close of the hearing, before issuing its final ruling on the matter, the trial court informed the parties that it had "marked up a -- I've got a copy of the findings of fact -- or the facts alleged by the plaintiff I've marked -- Xed out to make additional findings." The trial court orally found, by the greater weight of the evidence, that Plaintiff had proven her case and then stated, "here is the order."

Using a pre-printed form, the trial court entered the Order. In the Order, the trial court concluded, by checking the corresponding boxes, that Defendant committed four acts of domestic violence on 2 May 2023. Specifically, the trial court concluded that Defendant: (1) attempted to cause bodily injury to Plaintiff, (2) placed Plaintiff in fear of imminent serious bodily injury, (3) placed Plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress, and (4) committed second-degree rape as defined in N.C. Gen. Stat. § 14-27.22.

The Order includes a section intended for the trial court to: "describe defendant's conduct." In this section, the trial court made the following finding of fact: "Violent sexual contact. [Defendant] has caused physical injury to [Plaintiff]. Exhibit A is attached for further findings of fact by the court." Using a pen, the trial court struck through various sections of Plaintiff's typewritten statement, leaving the majority of her allegations intact, and purported to incorporate the lined-through typewritten statement by reference.

After the hearing, defense counsel sent Plaintiff's counsel a screenshot of the

same text message exchange. Unlike the image Plaintiff offered and authenticated at the hearing, however, this image included an additional message from Plaintiff as well as a response from Plaintiff to Defendant. The screenshot provided by defense counsel depicted the following text exchange:

> **Plaintiff:** [Image] Celebrate Chinese New Year
> ***Plaintiff:*** *[Smiley face emoji]*
> **Defendant:** You are looking better
> **Defendant:** Now if you only really liked learning and were really interested in a real sex life
> ***Plaintiff:*** *Gary, I still love you.*
> **Defendant:** See my sentence above- that is what I need aside from the beauty of the woman I married.

After receiving this information, Plaintiff's counsel confirmed that Plaintiff had altered the text message exchange before taking the screenshot that she presented to the trial court as Plaintiff's Exhibit 1.

Then, on 28 August 2023, Defendant filed a motion to set aside the Order and to show cause. On 15 September 2023, the trial court conducted a hearing on Defendant's motion. At the hearing, Plaintiff admitted to modifying the text exchange. The trial court denied Defendant's motion to set aside the Order and made the following finding:

> It does appear that plaintiff's evidence regarding text was not completely accurate. Court is not convinced that it was done by plaintiff to willfully mislead the court. Even if this evidence is stricken, there is still ample evidence for the entry of the DVPO.

In the order dismissing Defendant's motion to find Plaintiff in contempt, the trial

court made the following finding:

> Even though the text given by plaintiff and testified to by plaintiff was not a complete and accurate text, the court does not feel the conduct was willful.

On 15 September 2023, Defendant filed notice of appeal.

## II. Discussion

"When the trial court sits without a jury [regarding a DVPO], the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Hensey*, 201 N.C. App. at 59, 685 S.E.2d at 544 (alteration in original).

As a general rule, "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A–1, Rule 52(a)(1) (2023). In *Hensey*, however, this Court determined that an *ex parte* DVPO "need not contain findings and conclusions that fully satisfy the requirements of [Rule 52]." 201 N.C. App. at 63, 685 S.E.2d at 547.

In *Hensey*, the trial court issued an *ex parte* DVPO incorporating by reference the allegations found in the plaintiff's *verified* complaint. *Id.* at 64, 685 S.E.2d at 547 (emphasis added). Although we noted the trial court's "reference" to the plaintiff's complaint was not the preferred practice, we nonetheless determined that the trial court's incorporation was permissible given the "fundamental nature and purpose of an *ex parte* DVPO, which is intended to be entered on relatively short notice in order

to address a situation in which quick action is needed in order to avert a threat of imminent harm." *Id.* at 63, 685 S.E.2d at 547.

A one-year DVPO, unlike an *ex parte* DVPO, lacks the same sense of urgency necessitating an expedited and swift decision-making process, as an emergency *ex parte* order "[is] intended to provide a method for trial court judges or magistrates to quickly provide protection from the risks of acts of domestic violence by means of a process which is readily accessible to *pro se* complainants." *Id.* at 63, 685 S.E.2d at 546–47 (citing N.C. Gen. Stat. § 50B–2 (2007)). Additionally, a one-year DVPO does not present the same timing constraints as an *ex parte* DVPO. *Id.* at 63, 685 S.E.2d at 547 (noting that for an *ex parte* DVPO "there is simply not sufficient time to enter an order that is fully compliant with the requirements of N.C. Gen. Stat. §1A-1, Rule 52"); *see also* N.C. Gen. Stat. § 50B–3 (providing the trial court is required to conduct a hearing "within 10 days from the date of issuance of the [*ex parte* DVPO] or within seven days from the date of service of process on the other party, whichever occurs later"). Further, *ex parte* orders will generally remain in effect pending a hearing and entry of a one-year DVPO. Finally, when determining whether to issue a one-year DVPO, the trial court conducts a full adversarial hearing; a hearing for which both parties are given advance notice and an opportunity to present evidence. Accordingly, I would conclude that the trial court in this matter, as in any other civil bench trial, was required to comply with the provisions of Rule 52 when issuing the one-year DVPO because the emergent considerations discussed in *Hensey* were not implicated

7

here. *See Hensey*, 201 N.C. App. at 62, 685 S.E.2d at 546 (noting that the Rules of Civil Procedure apply in "all actions and proceedings of a civil nature" including an action brought under Chapter 50B).

In *Hensey*, the one-year DVPO issued by the trial court was also challenged on appeal; a fact which my colleagues correctly acknowledge. *Id.* at 66, 685 S.E.2d at 548. The majority states that *ex parte* DVPOs and one-year DVPOs are "independent of one another[.]" *Id.* at 66, 685 S.E.2d at 548. I do not disagree. But this Court's discussion surrounding the one-year DVPO in *Hensey* did not concern the adequacy of the trial court's findings under Rule 52. Instead, our Court reversed the one-year DVPO because the "plaintiff presented absolutely no evidence before the trial court." *Id.* at 67, 685 S.E.2d at 549. It is on this basis that the majority seeks to distinguish this case from *Hensey*.

I agree with the majority that this case is distinguishable from *Hensey* as far as the one-year DVPO is concerned. Here, unlike in *Hensey*, Plaintiff did present evidence at the DVPO hearing, including testimony concerning the allegations in her complaint. Such evidence could have supported findings describing an act of domestic violence; however, our inquiry under our standard of review does not end with the sufficiency of the evidence. *See id.*, at 59, 685 S.E.2d at 544. Ultimately, the majority's attempt to distinguish *Hensey*, does not undermine my conclusion that the trial court failed to find the facts in accordance with Rule 52. My discussion of *Hensey* is limited to considering its *ex parte* DVPO reasoning and logically extending it into

CARPENTER, J., *dissenting.*

the one-year DVPO arena.

In light of this preliminary conclusion, I next consider whether the trial court made sufficient findings of fact to support its conclusion that Defendant committed an act of domestic violence. In my view, the answer to this question is no. Rather, the trial court failed to demonstrate that it genuinely engaged in the fact-finding process as dictated by Rule 52. Furthermore, unlike the *ex parte* DVPO in *Hensey*, Plaintiff's complaint was unverified, lacking any guarantee of reliability and trustworthiness.

Specifically, "[t]o support entry of a DVPO, the trial court must make a conclusion of law 'that an act of domestic violence has occurred.'" *Kennedy v. Morgan*, 221 N.C. App. 219, 223, 726 S.E.2d 193, 196 (2012) (quoting N.C. Gen. Stat. § 50B–3(a) (2011)). "The conclusion of law must be based upon the findings of fact." *Id.* at 223, 726 S.E.2d at 196. "While the trial court need not set forth the evidence in detail it does need to make findings of ultimate fact which are supported by the evidence; *the findings must identify the basis for the 'act of domestic violence.'"* *Id.* at 223, 726 S.E.2d at 196 (quoting N.C. Gen. Stat. § 50B–3(a) (2011)) (emphasis added).

In *Coble v. Coble*, the North Carolina Supreme Court emphasized the core rationale behind Rule 52, stating:

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a correct

application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead "to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system."

300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (quoting *Montgomery v. Montgomery*, 32 N.C. App. 154, 158, 231 S.E.2d 26, 29 (1977)). As a result,

Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble*, 300 N.C. at 714, 268 S.E.2d at 190.

Therefore, to comply with Rule 52, the trial court is required to "find the ultimate facts essential to support the conclusions of law," by utilizing "processes of logical reasoning, based on the evidentiary facts." *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) (citations omitted). "[B]road incorporat[ion]" of complaints and other written reports from "outside sources as [] findings of fact" potentially usurps this process and may constitute an improper delegation of the trial court's fact-finding duty. *In re J.S.*, 165 N.C. App. at 511, 598 S.E.2d at 660.

Here, the trial judge usurped the process of logical reasoning required by Rule 52 by adopting Plaintiff's statement as its findings of fact. *See* N.C. Gen. Stat. § 1A-1, Rule 52. Instead of reducing its findings to writing, the trial court largely delegated

this duty to an "outside source," a party who admittedly altered evidence before presenting it to the trial court and arguably perjured herself by testifying that the screenshot of the text exchange was an accurate representation of the conversation that took place between Plaintiff and Defendant. *See In re J.S.*, 165 N.C. App. at 511, 598 S.E.2d at 660. The typewritten statement attached to the Order as "Exhibit A" did have certain portions struck through, evidencing at least a cursory review. But these minor adjustments, in my view, were not sufficient to demonstrate the process of logical reasoning required by Rule 52. *See Harton*, 156 N.C. App. at 660, 577 S.E.2d at 337. By simply attaching Plaintiff's typewritten statement to the Order, the trial court did not "make findings of these specific facts which support its ultimate disposition of the case." *See Coble*, 300 N.C. at 712, 268 S.E.2d at 189. Moreover, if the trial court had complied with Rule 52, the findings would be phrased in third person from the perspective of the trial court, not in first person from the perspective of Plaintiff.

Compounding the issue, Plaintiff's complaint was unverified. "An unverified complaint is not an affidavit or other evidence," *Hill v. Hill*, 11 N.C. App. 1, 10, 180 S.E.2d 424, 430 (1971), and "cannot be relied upon as sworn testimony," *Draughon v. Harnett Cnty. Bd. of Educ.*, 158 N.C. App. 705, 709, 582 S.E.2d 343, 345 (2003). Thus, the trial court's reliance on Plaintiff's typewritten statement, which she attached to her unverified complaint, further undermines the viability of the trial court's purported findings.

These discrepancies illustrate the pitfalls of a trial court simply adopting written allegations prepared outside of court and not admitted into evidence as an exhibit, and thus delegating its fact-finding duty. Ultimately, the trial court's near verbatim reliance on the written statement as its findings of fact does not survive appellate review.

Finally, I note that my colleagues correctly observe that it is the trial court's role, not ours, to consider the credibility of the parties when engaging in the fact-finding process. I wholly agree. If the trial court had made findings in accordance with Rule 52 in the instant case, I would defer to the trial court's credibility assessment, as the majority does. My position is that the trial court's findings are inadequate, and we are unable to reach the question of whether they were supported by competent evidence.

## III. Conclusion

In my view, the trial court failed to specifically find the facts in accordance with Rule 52. The trial court's reference-based approach to fact-finding is not only a disfavored practice, it is a shortcut compromising quality and impeding appellate review. It is not unreasonable to require the trial court to take the time necessary to reduce its findings to writing as required by Rule 52. I would hold the trial court's incorporation of Plaintiff's unverified, typed statement in the Order as support for its conclusion that Defendant committed an act of domestic violence was an improper delegation of the trial court's fact-finding duty. The trial court's remaining findings—

12

that Defendant engaged in "violent sexual contact" with Plaintiff and "caused physical injury to [Plaintiff,]"—are conclusory. Without more links in the chain of reasoning, these findings are insufficient to determine whether the Order was warranted. Accordingly, I would vacate the Order and remand for additional findings as required by Rule 52 of the North Carolina Rules of Civil Procedure. I respectfully dissent.